1   THOMAS W. FALVEY, SBN 65744
    thomaswfalvey@gmail.com
2   MICHAEL H. BOYAMIAN, SBN 256107
    mike.falveylaw@gmail.com
3   ARMAND R. KIZIRIAN, SBN 293992
    armand.falveylaw@gmail.com
4   LAW OFFICES OF THOMAS W. FALVEY
    550 North Brand Boulevard, Suite 1500
5   Glendale, California 91203
    Telephone:  (818) 547-5200
6   Facsimile:   (818) 500-9307

7   Attorneys for Plaintiffs RAMON GARCIA,
    VICTOR RAMIREZ, ADRIAN VALENTE,
8   MARIO PINON, and MYNOR CABRERA,
    Individually and on Behalf of All Similarly Situated Individuals
9
    *Additional Counsel Listed on Following Pages*
10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13  RAMON GARCIA, an individual;          Case No: 3:16-cv-04440-WHO
    VICTOR RAMIREZ, an individual;
14  ADRIAN VALENTE, an                    [The Honorable William H. Orrick]
    individual; MARIO PINON, an
15  individual; MYNOR CABRERA,            **CLASS ACTION**
    an individual; Individually, and on
16  Behalf of All Similarly Situated      **NOTICE OF MOTION AND MOTION**
    Individuals                           **FOR PRELIMINARY APPROVAL OF**
17                                        **PARTIAL CLASS ACTION**
                Plaintiffs,               **SETTLEMENT; MEMORANDUM OF**
18                                        **POINTS AND AUTHORITIES IN**
                vs.                       **SUPPORT THEREOF**
19
    MACY'S WEST STORES, INC., an          Date: April 5, 2017
20  Ohio corporation; JOSEPH              Time: 2:00 p.m.
    ELETTO TRANSFER, INC., a              Courtroom: 2 (17th Floor)
21  New York corporation; XPO
    LOGISTICS, LLC, an Ohio               [CONCURRENTLY FILED WITH
22  corporation; and DOES 1 through       DECLARATION OF THOMAS W.
    25, Inclusive,                        FALVEY ISO MOTION FOR
23                                        PRELIMINARY APPROVAL;
                Defendants.               [PROPOSED] ORDER]
24
                                          *Action Filed*:  July 1, 2016
25
                                          *Complaint Removed:* August 5, 2016
26
                                          *Trial:* None currently Scheduled
27

28

---

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

1   JOSEPH M. LOVRETOVICH, SBN 73403
    JML@jmllaw.com
2   DAVID F. TIBOR, SBN 230563
    david@jmllaw.com
3   JML LAW, APLC
    21502 Oxnard Street
4   Woodland Hills, California 91367
    Telephone:  (818) 610-8800
5   Facsimile:   (818) 610-3030

6   Attorneys for Plaintiffs RAMON GARCIA,
    VICTOR RAMIREZ, ADRIAN VALENTE,
7   MARIO PINON, and MYNOR CABRERA,
    Individually and on Behalf of All Similarly Situated Individuals

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

**NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on Wednesday, April 5, 2017, at 2:00 p.m., or as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William H. Orrick, Plaintiffs Ramon Garcia, Victor Ramirez, Adrian Valente, Mario Pinon and Mynor Cabrera ("Plaintiffs") will and hereby do move this Court for an Order Granting Preliminary Approval of Partial Class Action Settlement.  Plaintiffs' Motion is based on this Notice and the accompanying Memorandum of Points and Authorities and exhibits thereto; the Declaration of Thomas W. Falvey and the respective exhibits thereto; the Proposed Order; this Court's files and records; and any other evidence, briefing, or argument properly before this Court.

Plaintiffs filed this class action lawsuit to address a common occurrence in today's workplace during a time of high unemployment: the claim by employers that individuals are not employees, but independent contractors.  Plaintiffs alleged Defendants Macy's West Stores, Inc., and Joseph Eletto Transfer ("Defendants" or "Macy's" or "Eletto") consistently failed to pay them and their fellow truck drivers and helpers for all hours worked, and that they were not provided meal and rest periods.

Numerous truck drivers and helpers were contacted and verified what Plaintiffs were claiming, namely, that they were not being paid what they were owed, and that they were not being provided with the meal and rest breaks to which they were entitled.

Defendants vehemently denied - and continue to deny - all allegations.  Both Macy's and Eletto claim that all such individuals were properly classified as Independent Contractors.

///

i

1   This partial class action settlement only covers the period from July 1, 2012
2   to December 27, 2014.  This time frame encompasses the start of the statutory
3   period of this suit and proceeds until Eletto no longer operated the Macy's
4   warehouse that is the subject of this action.  Defendant XPO Last Mile, Inc. is not a
5   party to this partial settlement, and the claims against Macy's will remain pending
6   for period beginning on December 28, 2014, through to the present.

7   Class Counsel reviewed a substantial amount of documents, driver
8   identification information, pay stubs, and company policies and procedures.

9   The Class Representatives have negotiated a settlement that, if approved by
10   the Court, will result in a payment of one million five hundred fifty thousand dollars
11   ($1,550,000) to these drivers and helpers.  The Class Representatives now seek
12   preliminary approval of this partial class action settlement.

13   The Class Representatives believe the settlement is fair, reasonable, and
14   adequate.  They respectfully request that the Court review the Settlement Agreement
15   attached as Exhibit "1" to the Declaration of Thomas W. Falvey ("Falvey Dec."),
16   and enter an order:

17   (1) granting preliminary approval of the proposed Settlement;

18   (2) conditionally certifying the Class for settlement purposes;

19   (3) approving the form, content and method of distribution of the Notice of
20   Class Action Settlement;

21   (4) appoint the Law Offices of Thomas W. Falvey and JML Law, APLC as
22   Class Counsel;

23   (5) appoint plaintiffs Ramon Garcia, Victor Ramirez, Adrian Valente, Mario
24   Pinon and Mynor Cabrera as class representatives;

25   (6) appoint Kurtzman Carson Consultants as Settlement Administrator;

26   (7) set a filing deadline for Class Counsel's motion requesting attorneys' fees,
27   costs, enhancement awards to Plaintiffs, which Plaintiffs respectfully request occur
28   prior to the deadline for Class Members to file objections; and

1    (8) schedule a hearing regarding Class Counsel's request for attorney's fees

2    and costs, enhancement awards to Plaintiffs, and enhancement awards to Class

3    Members who were deposed, and final approval of the proposed Settlement.

4                                    Respectfully Submitted,

5

6    Dated: March 1, 2017            LAW OFFICES OF THOMAS W. FALVEY

7                                    JML LAW, APLC

8

                                     By:    /s/ Armand R. Kizirian
9                                           ARMAND R. KIZIRIAN
                                            Attorneys for Plaintiffs and Putative Class
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

1

**TABLE OF CONTENTS**

2    I.      INTRODUCTION  ..........................................................................1

3    II.     DEFINITIONS ...............................................................................2

4    III.    FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS...........4

5    IV.    PROCEDURAL BACKGROUND.................................................5

6    V.      TERMS OF THE SETTLEMENT...................................................7

7    VI.    LEGAL ARGUMENT.........................................................7

8             A. Preliminary Approval of the Settlement is Appropriate

9                     1.  The Settlement is the Product of Informed, Non-Collusive

10   Negotiation.

11                    2. The Strength of Plaintiff's Case and the Risk of Further Litigation

12                    Support Preliminary Approval.

13                    3. The Settlement Falls Within the Range of Possible Approval.

14                    4. Plaintiffs Request for Attorneys' Fees and Costs is Reasonable.

15                    5. Plaintiffs Request For Enhancement Award Are Reasonable.

16                    6. The Settlement Administrator Costs Are Reasonable.

17            B. The Class Should be Provisionally Certified

18                    1. Standards Governing Approval of Settlement Classes

19                    2. The Class Satisfy the Requirements of Rule 23(a)

20                    3. The Class Meets the Requirements of Rule 23(b)(3).

21                    4. Summary Of The Terms Of The Proposed Settlement Agreement

22                       And Release Of Claims.

23                          (i) Class Definition

24                          (ii) Settlement Amount

25                          (iii) Allocation of Payment And Distribution To Class Members

26                          (iv) Attorneys' Fee, Costs, and Enhancement Fees

27                          (v) Cost Of Settlement Administration

28                          (vi) Administration Of Notice And Opt-Out Process

I

(vii) Disputes, Request For Exclusion, and Objections

(vii) Release Of Claims.

C. The Proposed Notice is Adequate.

D. The Court Should Set a Final Approval Hearing

VII. CONCLUSION..................................................................................25

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement; Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

1

## TABLE OF AUTHORITIES

2 **Cases**

3 *Bautista v. Havesvest Management Sub*,
   No. 2:12-cv-10004 (ECF No. 60) (C.D. Cal.2013). . . . . . . . . . . . . . . . . . . . 11
4

*Campbell v. Pricewaterhouse Coopers*,
5    253 F.R.D 586,599 (E.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . .  15-16

6 *Ching v. Siemens Indus.*,
   2013 U.S.Dist. LEXIS 169279, (N.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . 11
7

*Custom LED, LLC v. eBay, Inc.*,
8    2013 U.S.Dist. LEXIS 12202 (N.D.Cal.2013). . . . . . . . . . . . . . . . . . . . . . . 18

9 *Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15-18
10

*Harris v. Vector Mktg.Corp.*,
11   2011 U.S.Dist. LEXIS 48878-23-24 (N.D.Cal.2011).. . . . . . . . . . . . . . . . . . 7

12 *In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005). . . . . . . . . . . . . . . . . . . . . . . 12
13

*In re Med. X-Ray Film Antitrust Litig.*,
14   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998). . . . . . . . . . . . . . . . . . . . . . . . . 12

15 *In Re Tableware Antitrust Litig.*,
   488 F.Supp. 2d 1078,1079 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . .  7, 9
16

*In Re Mercury Interactive Securities Litig.*,
17   618 F.3rd. 988,994 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 *Knight v. Red Door Salons, Inc.*,
   *2009 U.S.Dist.LEXIS 11149 (N.D.Cal. 2013).* . . . . . . . . . . . . . . . . . . . . . . 12
19

*Mazza v. Am.Honda Motor Co., Inc.*,
20   666 F. 3rd. 581, 589 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

21 *Officers for Justice v. CM! Serv. Comtn of City & City of San Francisco.*,
   688 F.2d 612, 625 (9th Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9-10
22

*Ogbuehi v. Comcast of California/Colorado/Florida/ Oregon, Inc.*,
23   2015 WL 3622999 (E.D. Cal. June 9, 2015). . . . . . . . . . . . . . . . . . . . . . . . 12

24 *Rodriguez v. W. Publg. Corp.*,
   563 F.3d. 958 (9th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
25

*Scott v. Bimbo Bakeries USA*,
26   No. 2:10cv03154 (ECF No. 174). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

27 *Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370, 1375 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
28

---

III

*Van Vranken v. Atlantic Richfield Co.,*
    901 F.Supp. 294,299  (N.D.Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vero v. Aaron Bros.,*
    U.S. Dist. LEXIS 178511 (N.D.Cal 2013) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Villegas v. J.P Morgan Chase & Co.,*
    2012 U.S. Dist. LEXIS 166704, 1546(N.D. Cal. 2012). . . . . . . . . . . . . . 8, 10

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wang v. Chinese Daily News, Inc.,*
    231 F.R.D 602, 612 (C.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATUTES**

California Labor Code § 1171.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure, Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement; Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs Ramon Garcia, Victor Ramirez, Adrian Valente, Mario Pinon and Mynor Cabrera ("Plaintiffs") seek preliminary approval of a settlement on behalf of themselves and the Putative Class comprised of all individuals purported to be independent contractors, who now or formerly performed services for Defendants Macy's West Stores, Inc., and Joseph Eletto Transfer, Inc. ("Defendants" or "Macy's" or "Eletto") (Plaintiffs and Defendants together as the "Parties") as Drivers and/or Helpers, at Macy's Logistic and Operations Center located at 1208 Whipple Road, Union City, California 94587, at any time from July 1, 2012 to December 27, 2014 ("Putative Class Members").

Plaintiffs allege that they and other Putative Class Members were misclassified as Independent Contractors while performing services for Defendants, and therefore denied the protections of the California Labor Code.  Plaintiffs therefore alleged claims for unpaid wages, minimum wages, overtime pay, interest thereon, wage statement and waiting time penalties, and other equitable relief, as well as reasonable attorneys' fees and costs.

The main terms of the Settlement are as follows:

a.    Defendants Macy's and Eletto agree to pay one million five hunred and fifty thousand dollars and zero cents ($1,550,000.00) ("Gross Settlement Amount") to settle the Action, which shall include attorneys' fees and costs, the Class Representative Enhancement Awards, and court-approved costs of settlement administration.  Defendant Eletto will contribute the full amount of the Gross Settlement Amount.

b.    Putative Class Members will receive a portion of the Net Settlement Amount as long as they do not opt out of the Settlement by submitting valid and timely exclusion forms to the Settlement Administrator, as set forth below and as explained in the Notice of Class Action Settlement ("Notice").  Putative Class

1

Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO

1  Members will also be given the opportunity to submit a Verified Claim Form in
2  order to specify the amount of time they worked for Defendants during the period
3  covered by this settlement.

4      The Settlement Agreement, including all exhibits, is attached as Exhibit "1"
5  to the Declaration of Thomas W. Falvey in Support of Plaintiffs Motion for
6  Preliminary Approval of Class Action Settlement ("Falvey Dec."), filed herewith.

7  **II.   DEFINITIONS**

8      a.   "Action" refers to the state court action filed in the Superior Court of
9  California, County of Alameda, entitled "RAMON GARCIA, an individual,
10 VICTOR RAMIREZ, an individual, ADRIAN VALENTE, an individual, MARIO
11 PINON, an individual, and MYNOR CABRERA, an individual, Individually and on
12 Behalf of All Similarly Situated Individuals, Plaintiffs, v. MACY'S WEST
13 STORES, INC., an Ohio corporation, JOSEPH ELETTO TRANSFER, INC., a New
14 York corporation, XPO LOGISTICS, LLC, an Ohio corporation, and DOES 1
15 through 25, Inclusive, Defendants," Case Number RG16821800.  The Action was
16 removed to federal court by XPO Logistics, LLC on August 5, 2016, Case Number
17 4:16-cv-04440-YGR.  On September 6, 2016, the Action was deemed related to the
18 *Carter v. XPO Logistics, Inc.* (Case Number 16-cv-01231-WHO) case and thereafter
19 was reassigned to the Honorable William H. Orrick.

20     b.   "Class Period" shall mean from July 1, 2012 to December 27, 2014.

21     c.   "Class Representative(s)" shall refer to Plaintiffs Ramon Garcia, Victor
22 Ramirez, Adrian Valente, Mario Pinon, and Mynor Cabrera.

23     d.   "Class Representative Enhancement" shall refer to a payment to the
24 Class Representatives for their services in this Action and as consideration for their
25 general release of all individual claims against Defendants.  This payment is subject
26 to Court approval and shall not exceed $2,000 for each Class Representative.

27     e.   "Court" refers to the United States District Court, Northern District of
28 California, the Honorable William H. Orrick presiding.

1    f.    "Defense Counsel" shall refer to Christopher C. McNatt, Megan E.

2 Ross, Andrew J. Butcher, and Adam C. Smedstad of Scopelitis, Garvin, Light,

3 Hanson & Feary, for Defendant Joseph Eletto Transfer, Inc., and David S. Bradshaw

4 and Nathan W. Austin of Jackson Lewis PC and Michael C. Christman of Macy's

5 Law Department for Defendant Macy's West Stores, Inc.

6    g.    "Gross Settlement Amount" means the sum of One Million Five

7 Hundred Fifty Thousand dollars and zero cents ($1,550,000.00) that Defendant

8 Eletto agrees to pay to settle this lawsuit and shall include attorneys' fees and costs

9 (not to exceed 33 1/3% of the Gross Settlement Amount in attorneys' fees and

10 $20,000 in attorney costs), the amounts distributed to Settlement Class Members

11 from the Net Settlement, the Class Representative Enhancement, and Settlement

12 Administrator Costs.  In no event shall more than One Million Five Hundred Fifty

13 Thousand dollars and zero cents ($1,550,000.00) of the Gross Settlement Amount

14 be paid or owed by Defendant Macy's or Defendant Eletto.

15    h.    "Net Settlement Amount" shall be the remainder of the Gross

16 Settlement Amount after deductions for attorneys' fees and costs (not to exceed 33

17 1/3% of the Gross Settlement Amount in attorneys' fees and $20,000 in costs), the

18 Class Representative Enhancement, and Settlement Administrator Costs. The Net

19 Settlement Amount shall be established by the Settlement Administrator for the

20 benefit of Settlement Class Members and Settlement Class Members shall be paid

21 from the Net Settlement Amount.

22    i.    "Notice" shall mean the Notice of Class Action Settlement,

23 substantially in the form attached as Exhibit "A" to the Settlement Agreement,

24 which is itself attached as Exhibit "1" to the Falvey Declaration.  The Settlement

25 Administrator will mail the Notice to each Putative Class Member explaining the

26 terms of the Settlement.  Exhibit "A" is the notice approved by the Parties and

27 subject to Court approval.

28 ///

1           j.       "Plaintiffs' Counsel" shall collectively refer to Thomas W. Falvey,

2 Michael H. Boyamian, and Armand R. Kizirian of the Law Offices of Thomas W.

3 Falvey and Joseph M. Lovretovich and David F. Tibor of JML Law, APLC.

4           k.       "Preliminary Approval Date" means the date the Order Granting

5 Preliminary Approval of Proposed Class Action Settlement is signed by the Court.

6           l.       "Putative Class" or "Putative Class Member" are defined as all

7 individuals who performed services as Drivers and/or Helpers delivering

8 Macy's/Bloomingdale's products and/or furnishings, and associated with Joseph

9 Eletto Transfer, Inc. out of/at the location identified as the Macy's Logistics and

10 Operations distribution center, 1208 Whipple Road, Union City, California 94587

11 from July 1, 2012 to December 27, 2014.

12           m.      "Settlement" or "Settlement Agreement" shall mean this Joint

13 Stipulation of Class Action Settlement and Release.

14           n.       "Settlement Administrator" shall be a third-party claims administrator

15 agreed upon by the Parties to perform the customary duties of a settlement

16 administrator including, but not limited to, the duties enumerated in this Settlement

17 Agreement.

18           o.       "Settlement Administrator Costs", as outlined in the Settlement

19 Agreement marked as Exhibit "1" to the Falvey Declaration, shall mean the total of

20 all costs actually incurred by the Settlement Administrator in order to make all

21 payments owed to Settlement Class Members.

22           p.       "Settlement Class Member" shall mean a Putative Class Member who

23 does not timely opt out of the Settlement and shall include the Class

24 Representatives.

25 **III.    FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS**

26        Macy's is a well-known department store, doing business in the State of

27 California, a subdivision of Macy's Inc. of New York.  Eletto is a New York

28 corporation registered with the California Secretary of State, and provides logistics

4

services, conducting business with Macy's in the State of California.  Defendants
had the Putative Class Members perform services for Defendants in delivering
furnishings.

The putative class consists of approximately 275 individuals who currently or
formerly performed services for Defendants during the Class Period and identified
as Drivers and/or Helpers.  Declaration of Thomas W. Falvey in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Falvey
Decl."), ¶ 16.  Plaintiffs claim that Drivers and Helpers were not properly paid
wages under California law.  Defendants maintain that at all times, the Drivers and
Helpers utilized by Defendants have been properly paid as independent contractors.

## IV.   PROCEDURAL BACKGROUND

On July 1, 2016, Plaintiffs filed this case in Alameda County Superior Court
on behalf of California residents who are or have been utilized as Drivers and
Helpers by Defendants during the period commencing July 1, 2012 through the
present.  Falvey Decl., ¶ 8.

This partial class action settlement only covers the period from July 1, 2012
to December 27, 2014.  This time frame encompasses the start of the statutory
period of this suit and proceeds until Defendant Eletto no longer operated the
Macy's warehouse that is the subject of this action.  Defendant XPO Last Mile, Inc.
is not a party to this partial settlement, and the claims against Defendant Macy's
will remain pending for period beginning on December 28, 2014, through to the
present.  Falvey Decl., ¶ 7; Settlement Agreement, ¶ 1(t).

The Complaint states the following causes of action: (1) Unpaid Wages; (2)
Failure to Pay Minimum Wage; (3) Failure to Pay Overtime Compensation; (4)
Failure to Provide Meal and Rest Periods; (5) Failure to Furnish Accurate Wage and
Hour Statements; (6) Waiting Time Penalties; (7) Indemnification; (8) Conversion;
and (9) Unfair Competition.

///

On August 5, 2016, Defendant XPO removed this case to the United States District Court for the Northern District of California. On September 6, 2016, the case was deemed related to the *Carter v. XPO Logistics, Inc.*, case number 3:16-cv-01231-WHO, and reassigned to the Honorable William H. Orrick. On January 3, 2017, *Kramer v. XPO Logistics, Inc.*, case number 3:16-cv-07039-WHO was also deemed to be related to the *Carter* action and this action, and therefore reassigned to the Honorable William H. Orrick. The parties of these three related actions have since been coordinating with each other, to a limited extent, in moving this litigation forward. The three cases, however, remain distinct and have not been consolidated. The two Defendants that are settling with Plaintiffs in this action are not party to either the *Carter* or *Kramer* suits.

Plaintiffs' Counsel has conducted a thorough investigation into the relevant facts and legal claims. Plaintiffs' Counsel closely reviewed the data provided by Defendants in advance of mediation to determine the amount of damages potentially available to Putative Class Members. Falvey Decl., ¶¶ 16-24. Class Counsel also contacted and extensively interviewed Putative Class Members.

Mediation was conducted with Michael D. Young, Esq. of Judicate West, on October 5, 2016. Counsel for the Parties fully briefed their positions to the mediator. After a full day of extensive arms-length negotiations by and among the Parties, the Parties were able to reach an agreement in principal. After further negotiations, the Parties finalized the terms of the agreement in January 2017. Falvey Decl., ¶ 12.

Based on an independent investigation and evaluation, Plaintiffs' Counsel are of the opinion that the Settlement with Defendants for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the Putative Class Members, in light of all known facts and circumstances, including the risk of significant delay, the risk that if this matter is litigated a Class may not be certified by the Court or that it may later be decertified,

6

1  the risk that Defendants will prevail on their defenses, as well as potential appellate

2  issues.  Falvey Decl., ¶ 14.

3  **V.    TERMS OF THE SETTLEMENT**

4       The complete Settlement Agreement, along with its exhibits, is attached as

5  Exhibit "1" to the Falvey Declaration.

6  **VI.   LEGAL ARGUMENT**

7       **A.    Preliminary Approval of the Settlement is Appropriate.**

8       The dismissal or compromise of a class action requires court approval.  Fed.

9  R. Civ. P. 23(e).  Approval involves a two-step process in which the Court first

10 determines whether a proposed class action settlement warrants preliminary

11 approval and, if so, directs that notice be sent to proposed class members, reserving

12 closer scrutiny for the final approval hearing.  *See Harris v. Vector Mktg. Corp.*

13 *(ND.* Cal. 2011) 2011 U.S. Dist. LEXIS 48878, 23-24.  Approval of a class action

14 settlement rests in the discretion of the Court, which should ultimately determine

15 whether the settlement is fundamentally fair, adequate, and reasonable to the Class.

16 *See Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370, 1375.

17       A court should grant preliminary approval of a settlement if it "appears to be

18 the product of serious, informed, non-collusive negotiations, has no obvious

19 deficiencies, does not improperly grant preferential treatment to class

20 representatives or segments of the class, and falls within the range of possible

21 approval."  *See In re Tableware Antitrust Litig.* (N.D. Cal. 2007) 484 F.Supp.2d

22 1078, 1079.  Courts should also apply their discretion in light of the judicial policy

23 favoring settlement of complex class action litigation.  *See, e.g., Officers for Justice*

24 *v. CM! Serv. Comtnn of City & Cnty. of San Francisco* (9th Cir. 1982) 688 F.2d

25 615, 625 ("[I]t must not be overlooked that voluntary conciliation and settlement are

26 the preferred means of dispute resolution. This is especially true in complex class

27 action litigation. . .").  As discussed below, application of the relevant factors to this

28 case supports preliminary approval.

7

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

1

### 1.   The Settlement is the Product of Informed, Non-Collusive Negotiation.

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive. *See Villegas v. J.P. Morgan Chase & Co.,* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704, *1546. Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the parties. On October 5, 2016, the Parties attended a full-day mediation with experienced mediator, Michael D. Young, Esq. The Parties were able to reach a Settlement that was based upon the mediator's advice and guidance, and fundamentally based on the course of litigation in the *Fuentes v. Macy's* action. While a settlement figure was agreed upon by the Parties on October 5, 2016, negotiations as to the specific terms of the agreement continued into January 2017. Falvey Decl., ¶¶ 8,12.

Here, the Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. The parties engaged in a comprehensive exchange of information and each conducted an extensive investigation of the factual allegations involved in this case. Falvey Decl., ¶¶ 12-14, 25-29, 31.

### 2.   The Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval.

Plaintiffs allege that Defendants improperly classified all Drivers and Helpers as independent contractors, thus exempt from minimum wage, overtime, meal and rest period laws, and the wider protections of California Labor Code § 1171. Further litigation carries numerous risks and obstacles for Plaintiffs and Putative Class Members, as described below. Falvey Decl., ¶ 14.

First, Plaintiffs may not be able to certify the Class of Drivers and Helpers under Rule 23(b). Plaintiffs largely rely on the uniform policy of claiming the Putative Class Members to be independent contractors to establish predominance. Plaintiffs will also argue that other common issues also predominate, such as

8

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement; Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

1  whether the job expectations and degree of control exercised by Defendants upon
2  the Drivers and Helpers are uniform across the Class.

3      Plaintiffs believe that Drivers and Helpers have strong claims that they were
4  misclassified as independent contractors because they were under the constant
5  supervision and control of Defendants throughout their daily activities, among other
6  things, wearing uniforms depicting them as employees, and being told to inform
7  customers that they were so employed by Defendants.  Falvey Decl., ¶ 13.

8      Even if Plaintiffs can show that Drivers and Helpers were not independent
9  contractors, Defendants can assert numerous defenses regarding liability and
10 damages.  For instance, Defendants contend that the owners of the trucks employed
11 Putative Class Members.  With regard to Plaintiffs' claims for wage statement and
12 waiting time penalties, both claims are derivative of Plaintiffs' primary wage claims.
13 Thus, Plaintiffs would recover nothing for themselves, or the Class, if the
14 underlying claims are unsuccessful.  Falvey Decl., ¶¶ 14-15.

15          **3.    The Settlement Falls Within the Range of Possible Approval.**

16     In deciding whether the proposed settlement is adequate and falls within the
17 range of possible approval, "courts primarily consider plaintiffs' expected recovery
18 balanced against the value of the settlement offer", while taking into account the
19 risks of continuing litigation.  *See In re Tableware Antitrust Litig.* 484 F.Supp.2d at
20 1080.  Courts should recognize that "the agreement reached normally embodies
21 compromise; in exchange for the saving of cost and elimination of risk, the Parties
22 each gave up something they might have won had they proceeded with litigation."
23 *Officers for Justice* 688 F.2d at 624, (internal quotations and citation omitted).  "[I]t
24 is well-settled law that a cash settlement amounting to only a fraction of the
25 potential recovery does not *per se* render the settlement inadequate or unfair.
26 Rather, the fairness and the adequacy of the settlement should be assessed relative
27 to risks of pursuing the litigation to judgment." *Villegas,* 2012 -U.S. Dist. LEXIS
28 166704 at 96 (internal quotations and citations omitted).

1    Here, the Settlement is fair, adequate, and well within the range of possible

2 approval.  Without conceding that any adverse rulings would be justified, Plaintiffs

3 recognize the risk of such outcomes as described above.  If Defendants were able to

4 prove that Drivers and Helpers are properly classified as independent contractors,

5 then the value of the case would be zero.  All of Plaintiffs' claims and damages rely

6 upon this threshold issue.  Falvey Decl., ¶¶ 14, 24.

7    If Plaintiffs are able to demonstrate that Drivers and Helpers are not

8 independent contractors, then the value of Plaintiffs' claims depend principally on

9 the number of overtime hours worked by Putative Class Members, the frequency at

10 which meal and rest breaks were missed, and derivative penalties.  Plaintiffs'

11 calculate damages as ranging from $0, if they cannot prevail on the threshold

12 independent contractor vs. employee issue, to above $11,500,000, if Plaintiffs are

13 able to prevail on all claims.  Falvey Decl., ¶¶ 16-24.

14    In order to properly value the claims at issue, however, these figures must be

15 reduced according to the likelihood that Plaintiffs will prevail on their motion for

16 class certification.  Moreover, even if class certification is granted, the figures must

17 be further be reduced according to the likelihood that Plaintiffs will ultimately be

18 able to prevail on the merits.  As set forth above, for the purposes of settlement

19 only, Plaintiffs acknowledge that this case may face significant hurdles at both the

20 certification and the liability phases of the litigation.  Falvey Decl., ¶ 24.

21    Based on the foregoing, the Settlement will result in a fair and reasonable

22 award to Putative Class Members in light of the litigation risks.  The net amount to

23 be paid to the Class under the proposed Settlement (after payment of Class

24 Counsel's attorneys' fees and costs, Settlement Administration Costs, and the Class

25 Representative Enhancements), will be at least $988,333.33.  The average Putative

26 Class Member payout under this amount would be approximately $3,600.  Falvey

27 Decl., ¶ 7.  Thus, the Settlement avoids the risks of litigation while ensuring that

28 Class Members receive substantial consideration for a release of their claims. Falvey

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

1  Decl., ¶¶ 14, 24.  The Settlement also affords relief to Putative Class Members who
2  likely would not have filed individual claims. Falvey Decl., ¶ 31.

3       Under the circumstances, the amount of the settlement is fair, adequate and
4  reasonable.  *See Scott v. Bimbo Bakeries USA* (ED. Pa. 2014) No. 2:10cv03154
5  (ECF No. 174) (approving a settlement of wage and hour claims for payments of
6  $900 to each current driver and $450 to each former driver, plus $12,500
7  enhancement payments); *Vero v. Aaron Bros.,* (N.D. Cal. 2013) 2013 U.S. Dist.
8  LEX1S 178511 (granting preliminary approval of settlement of wage and hour
9  claims where the average recovery would be between approximately $28 and $45);
10 *Bautista v. Harvest Management Sub,* (C.D. Cal. 2013) No. 2:12-cv-10004 (ECF
11 No. 60) (preliminarily approving a $2.2 million settlement of wage-and-hour
12 violation claims of 14,000-member class).

13      The plan of allocation is also fair and reasonable.  The Settlement provides
14 that the settlement fund shall be allocated based on the number of days Putative
15 Class Members worked during the Class Period, a plan of allocation that is more
16 precise than a weekly allocation method.  *See, e.g., Ching v. Siemens Indus.,* (N.D.
17 Cal. 2013) 2013 U.S. Dist. LEXIS 169279, at *19 (granting preliminary approval of
18 settlement and finding that weeks worked was a reasonable basis for allocating
19 individual payments).

20     **4.  Plaintiffs' Request for Attorneys' Fees and Costs is Reasonable.**
21      The Settlement provides that, prior to the final approval hearing, Class
22 Counsel may petition the Court for an award of fees in an amount not to exceed
23 $516,666.66 (33-1/3% of the Settlement Amount) and an award of litigation
24 expenses in an amount not to exceed $20,000.00.  Class Counsel submit that these
25 amounts are fair and reasonable given their investment of time and expense over the
26 last eight months, their contingent fee risk, and the result that they have achieved.
27 The fees that will be requested are based on the amount that will be paid out to the
28 Class, and are within the range of reasonableness established by Ninth Circuit

1  authority.  *See, e.g., Knight v. Red Door Salons, Inc.,* (N.D. Cal. 2009) 2009 U.S.

2  Dist. LEXIS 11149, *17 (observing that class action fee awards average around

3  one-third of the recovery) (citations omitted); *see also Vizcaino v. Microsoft Corp.*,

4  290 F.3d 1043, 1048 (2002) ("exceptional results" in "absence of supporting

5  precedents" is relevant to fee determination).

6      Class Counsel have expended significant time litigating this matter, with a

7  risk of no recovery.  With their application for fees and costs, Class Counsel will

8  provide the Court with a detailed breakdown of their hours worked and fees

9  incurred for a lodestar cross-check.  Many courts have found that an award of one

10  third of the common fund is warranted under certain circumstances.  *See, e.g., In re*

11  *Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *8-*17

12  (C.D. Cal. June 10, 2005); *Ogbuehi v. Comcast of California/Colorado/Florida/*

13  *Oregon, Inc.*, No. 2:13-CV-00672-KJM, 2015 WL 3622999, at *11-*12 (E.D. Cal.

14  June 9, 2015); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D.

15  Cal. 2010); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL

16  661515, at *6 (E.D.N.Y. Aug. 7, 1998).  Class Counsel should be given the

17  opportunity to make such a showing to this Court through their application for fees

18  and costs.

19      Class Counsel shall file their application for fees and costs well in advance of

20  the final approval hearing date, so that Putative Class Members can be fully

21  informed of the fee request and have ample time to consider the request prior to the

22  deadline for objecting and opting out.  *See In re Mercury Interactive Securities*

23  *Litigation* (9th Cir. 2010) 618 F.3d 988, 994.  The fee motion will be heard at the

24  same time as the final approval motion.

25  ///

26  ///

27  ///

28  ///

**Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

1

### 5.   Plaintiffs' Requests for Enhancement Awards Are Reasonable.

2   Service or incentive awards are typical in class action cases.  *Rodriguez v. W.*

3   *Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 958.  In evaluating incentive awards,

4   courts may consider "1) the risk to the class representative in commencing suit, both

5   financial and otherwise; 2) the notoriety and personal difficulties encountered by the

6   class representative; 3) the amount of time and effort spent by the class

7   representative; 4) the duration of the litigation and; 5) the personal benefit (or lack

8   thereof) enjoyed by the class representative as a result of the litigation."  *Van*

9   *Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294, 299.  Here,

10   Class Counsel believe that the Class Representative Enhancement award up to the

11   total amount requested of $2,000.00 each is consistent with a fair, just and adequate

12   settlement.

13   Plaintiffs initiated this case and sought counsel to represent the proposed

14   Class.  Plaintiffs met with Class Counsel and provided documentary evidence

15   relevant to the claims in the case.  Falvey Decl., ¶ 8.  Plaintiffs also risked their own

16   professional reputation by suing their, alleged, former employer.  Any potential

17   future employer who searches the internet or runs a background check on Plaintiffs

18   will discover this fact.  In a competitive job market, this factor may weigh heavily

19   against them.  Therefore, Plaintiffs have also undertaken risks with respect to their

20   future employment prospects.  Falvey Decl., ¶ 8.

21   Plaintiffs will provide a supporting declaration at final approval describing

22   their efforts in this case, the amount of time spent serving the class, and the risks

23   they incurred.

24   ### 6.   The Settlement Administrator Costs are Reasonable.

25   Plaintiffs propose appointing Kurtzman Carson Consultants ("KCC") as the

26   Settlement Administrator in this case.  Class Counsel has elected to use KCC from

27   their review of competitive bids as the Settlement Administrator because it offered a

28

---

13

1  competitive bid and because of positive prior experiences.  Falvey Decl., ¶ 30.  The
2  KCC estimate is attached to the Falvey Declaration as Exhibit "2".

3      The Settlement Administration Costs will be paid from the Gross Settlement
4  Amount and will not exceed $15,000.00 absent court approval.  Therefore, the
5  Settlement Administration Costs here are reasonable as compared to the value of the
6  settlement.  Falvey Decl., ¶ 30.

7          **B.      The Class Should be Provisionally Certified.**

8      Plaintiffs requests that the Court provisionally certify the Rule 23(b)(3) class
9  for settlement purposes.  The purpose of provisional class certification is to
10  facilitate distribution to proposed class members of notice of the terms of a
11  proposed settlement and the date and time of the final approval hearing.  *See*
12  *Manual for Complex Litigation, Fourth §§* 21.632-33.  For purposes of this
13  Settlement only, Defendants Macy's and Eletto do not oppose Plaintiffs' request for
14  preliminary certification of the Putative Class.  Settlement Agreement, ¶ 33(e).

15          **1.      Standards Governing Approval of Settlement Classes.**

16      When considering a motion for preliminary approval of a settlement, the
17  Court must make a threshold determination as to whether the proposed settlement
18  class meets Rule 23 requirements.  *See Hanlon v. Chrysler Corp.* (9th Cir. 1998)
19  150 F.3d 1011, 1019-20.  Specifically, the Court must determine whether the
20  proposed class satisfies the requirements that (1) the class is so numerous
21  that joinder would be impracticable; (2) there are questions of law or fact common
22  to the class; (3) the named plaintiffs' claims are typical of the claims of the
23  proposed class; and (4) plaintiffs and their counsel will adequately and fairly
24  represent the interests of the class.  *Id.* at 1019.

25      Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b) (1),
26  (2), or (3).  *Id.* at 1022.  Based on these standards, as further discussed below, the
27  Court should certify the proposed Settlement Class for settlement purposes.  The
28  estimate from KCC provides that the settlement administration costs will equal

1  approximately $15,000.00, in line with the Settlement Agreement.  The final
2  settlement costs and supporting documentation will be submitted to the Court prior
3  to the final approval hearing.  Falvey Decl., ¶ 7.

**2.    The Class Satisfies the Requirements of Rule 23(a).**

5       The proposed Class satisfies all requirements of Rule 23(a).  First, it is
6  sufficiently numerous to satisfy Rule 23(a)(1).  "While there is no set number of
7  members required, courts have generally found classes numbering in the hundreds
8  to be sufficient to satisfy the numerosity requirement." *Campbell v. Pricewater-*
9  *houseCoopers* (E.D.Cal. 2008) 253 F.R.D. 586, 594.  In this case, the proposed
10 class consists of approximately 275 Putative Class Members who worked for
11 Defendants during the Class Period.  Falvey Decl., ¶ 16.  This will easily satisfy the
12 numerosity requirement.

13      Second, Rule 23(a)(2) is satisfied because there are questions of law and fact
14 common to the proposed Class.  *See Mazza v. Am. Honda Motor Co., Inc.* (9th Cir.
15 2012) 666 F.3d 581, 589 ("Commonality only requires a single significant question
16 of law or fact.").  The showing required to satisfy commonality is minimal.  *Hanlon,*
17 *150* F. 3d at 1020.  The presence of a single common question that will "drive the
18 resolution of the litigation" is sufficient *Campbell v. PricewaterhouseCoopers, LLP*
19 (E.D.Cal. 2012) 287 F.R.D. 615, 620.  Here, common factual and legal issues
20 include whether Putative Class Members were all improperly classified independent
21 contractors, which would and does satisfy the commonality requirement of Rule
22 23(a)(2).  Falvey Decl., ¶ 13.

23      Third, the typicality requirement of Rule 23(a)(3) is satisfied because the
24 claims raised by Plaintiffs are typical of the claims asserted on behalf of the Class.
25 Typicality is established if representative claims are "reasonably co-extensive with
26 those of absent class members; they need not be substantially identical." *Hanlon,*
27 150 F.3d at 1020.  Plaintiffs' claims arise out of the same factual and legal
28 circumstances as the claims of Putative Class Members: Like all Putative Class

1  Members, Plaintiffs were unlawfully classified as independent contractors, and
2  regularly worked unpaid overtime hours.  Because Defendants' policies and
3  practices were uniform and applied to all Putative Class Members, Plaintiffs' claims
4  against Defendants are typical of those of the Class.  Falvey Decl., ¶ 13.

5        Fourth, Plaintiffs' Counsel satisfy the adequacy requirement of Rule 23(a)(4),
6  as well as the requirements of Rule 23(g).  Rule 23(a)(4) requires that the Parties
7  fairly and adequately protect the interests of the class.  The adequacy requirement is
8  met where the named plaintiffs and their counsel do not have conflicts of interest
9  with other putative class members, and the named plaintiffs and their counsel will
10 vigorously prosecute the interests of the class.  *Hanlon*, 150 F.3d at 1020.  Here,
11 Plaintiffs and their counsel will more than adequately represent the Putative Class.
12 There are no conflicts and Class Representatives have claims that are in line with
13 those of the Class.  Plaintiffs have diligently participated in the litigation by
14 communicating regularly with counsel and providing documents and information
15 about the Class claims.  Falvey Decl., ¶ 8.

16       Rule 23(g)(1) requires courts, when appointing class counsel, to consider: (1)
17 the work counsel has done in identifying or investigating potential claims in the
18 action; (2) counsel's experience in handling class actions, other complex litigation
19 and the type of claims asserted in the action; (3) counsel's knowledge of the
20 applicable law; and (4) the resources that counsel will commit to its representation.
21 Here, Class Counsel have investigated and prosecuted the claims; have extensive
22 experience in class action litigation, including wage-and-hour claims, and have been
23 appointed Class Counsel in numerous other cases; and have demonstrated that they
24 have the ability and resources to vigorously pursue the claims.  Falvey Decl., ¶¶ 2-6.
25 For these reasons, Plaintiffs' Counsel and Plaintiffs meet the adequacy requirement
26 of Rule 23(a)(4).  Plaintiffs' Counsel should be appointed as Class Counsel pursuant
27 to Rule 23(g).
28 ///

Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO

### 3.    The Class Meets the Requirements of Rule 23(b)(3).

The Putative Class meets the requirements of Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."

First, the Putative Class satisfies the predominance requirement, which examines whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Hanlon,* 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*  Here, common issues predominate because Plaintiffs' claims turn on a common liability issue suited to class-wide adjudication: whether or not the Putative Class Members are properly classified as independent contractors under California law, based on the job duties and expectations applicable to all Drivers and Helpers.  Whether or not Drivers and Helpers are considered independent contractors under California law is an inherently common question that predominates over any individualized issues. Stemming from this threshold question, liability for Plaintiffs' state law claims thus depend upon common proof.  Falvey Decl., ¶ 13.

Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class-wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy." *See Hanlon,* 150 F.3d at 1023.  The alternative to a single class action–numerous individual actions–would be inefficient and unfair.  *See, e.g., Custom LED, LLC v. eBay, Inc.,* (N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 122022 (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations").  Class actions are generally found to be superior where individual claims are relatively small, there is

17

1    a large volume of individual claims, individuals lack a compelling interest in

2    controlling their own litigation, and there would be a strain on judicial resources if

3    individual claims were filed.  *See Wang v. Chinese Daily News, Inc.* (C.D. Cal.

4    2005) 231 F.R.D. 602, 614.

5                    **4.    Summary of the Terms of the Proposed Settlement
                            Agreement and Release of Claims.**

6           The complete details of the Settlement are contained in the Joint Stipulation

7    of Class Action Settlement and Release, signed by the Parties (Exhibit "1" to the

8    Falvey Declaration).  A summary of the settlement's primary terms follows:

9                              **(i)    Class Definition**

10          The Class is comprised of all individuals who performed services as Drivers

11   and/or Helpers delivering Macy's/Bloomingdale's products and/or furnishings, and

12   associated with Joseph Eletto Transfer, Inc. out of/at the location identified as the

13   Macy's Logistics and Operations distribution center, 1208 Whipple Road, Union

14   City, California 94587 from July 1, 2012 to December 27, 2014.

15                            **(ii)    Settlement Amount**

16          The Settlement Agreement provides that Defendant Eletto will pay one

17   million five hundred fifty thousand dollars ($1,550,000.00) to Plaintiff and the

18   Putative Class.  In exchange, Defendant Eletto will receive a complete release as to

19   the claims of this suit, and Defendant Macy's will receive a complete release as to

20   the time period in which Defendant Eletto operated the Macy's Logistics and

21   Operations distributions center in Union City going back to the start of the class

22   period, i.e. from July 1, 2012 to December 27, 2014.  The total of $1,550,000.00

23   shall be inclusive of attorneys' fees and costs, the Class Representative

24   Enhancements, and settlement administration costs.

25                    **(iii)    Allocation of Payments and Distribution to Class
                              Members**

26          This is not a mandatory claims-made settlement.  Putative Class Members

27   will receive a portion of the Net Settlement Amount as long as they do not opt out

28   of the Settlement by submitting valid and timely exclusion forms to the Settlement

                                            18

1  Administrator, as set forth below and as explained in the Notice.  However, all
2  Putative Class Members will be given the opportunity to submit a Verified Claim
3  Form to specify the number of days they believed they worked within the Class
4  Period, subject to a reasonable adjustment after consultation with the Settlement
5  Administrator and the Parties.  Settlement Agreement, ¶ 10(b)(ii), (c)(ii).

6      As Defendants do not admit liability, payments to Putative Class Members
7  from the Net Settlement Amount shall be allocated wholly (100%) as payments for
8  services by non-employees.  Correspondingly, the Settlement Administrator will
9  issue Forms 1099-MISC to all Putative Class Members who participate in the
10 Settlement.  The Settlement Administrator will calculate the individual settlement
11 awards to eligible Putative Class Members.

12     The Net Settlement Amount will be allocated as 60% for Putative Class
13 Member Drivers, and 40% for Putative Class Member Helpers.  Settlement
14 Agreement, ¶ 10(b), (c).  In order to calculate each Putative Class Member's share
15 of the settlement, the Settlement Administrator will use the following formulas:

16     The numerator for each Settlement Class Member Driver who returns a
17 Verified Claim Form shall be the total number of days reported by that Settlement
18 Class Member Driver, subject to a possible reasonable adjustment necessarily made
19 after consultation among the Settlement Administrator and counsel for the Parties.
20 The denominator for each Settlement Class Member Driver who returns a Verified
21 Claim Form shall be the total number of days worked by all Settlement Class
22 Member Drivers.  The proportionate share of the Driver Net Settlement Amount for
23 each Settlement Class Member Driver who returns a Verified Claim Form shall be
24 that Settlement Class Member Driver's numerator divided by the denominator.  The
25 Settlement Administrator will multiply the Driver Net Settlement Amount by the
26 proportionate share of each Settlement Class Member Driver who returns a Verified
27 Claim Form to determine that Settlement Class Member Helper's settlement share.
28 ///

19

Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO

Defendants records show the number of days worked total by all Settlement Class Drivers.  After the days worked figure by Settlement Class Member Drivers who ultimately do submit a Verified Claim Form is accounted for, the remaining days not accounted for will be assigned in equal shares to all Settlement Class Member Drivers who do not submit a Verified Claim Form.  As a result, all Settlement Class Member Drivers who do not submit a Verified Claim Form will receive an equal share of remaining funds from the Driver Net Settlement Amount. Settlement Agreement, ¶ 10(b).

The numerator for each Settlement Class Member Helper who returns a Verified Claim Form shall be the total number of days reported by that Settlement Class Member Helper, subject to a possible reasonable adjustment necessarily made after consultation among the Settlement Administrator and counsel for Defendants and Plaintiffs.  The denominator for each Settlement Class Member Helper who returns a Verified Claim Form shall be the total number of days worked by all Settlement Class Member Drivers.  The proportionate share of the Helper Net Settlement Amount for each Settlement Class Member Helper who returns a Verified Claim Form shall be that Settlement Class Member Helper's numerator divided by the denominator.  The Settlement Administrator will multiply the Helper Net Settlement Amount by the proportionate share of each Settlement Class Member Helper who returns a Verified Claim Form to determine that Settlement Class Member Helper's settlement share.

Defendants records show the number of days worked total by all Settlement Class Helpers.  After the days worked figure by Settlement Class Member Helpers who ultimately do submit a Verified Claim Form is accounted for, the remaining days not accounted for will be assigned in equal shares to all Settlement Class Member Helpers who do not submit a Verified Claim Form.  As a result, all Settlement Class Member Helpers who do not submit a Verified Claim Form will

Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO

1   receive an equal share of remaining funds from the Helper Net Settlement Amount.

2   Settlement Agreement, ¶ 10(c).

3        Checks issued to Settlement Class Members pursuant to this Settlement shall

4   remain negotiable for a period of one-hundred and eighty (180) days from the date

5   of mailing.  Settlement Class Members who fail to negotiate (i.e., cash or deposit)

6   their check(s) in a timely fashion shall remain subject to the terms of this

7   Settlement.  After the expiration of one-hundred and eighty (180) days, the sum of

8   any un-cashed/un-deposited checks shall revert to the Net Settlement Amount and

9   shall be distributed to the Legal Aid Society – Employment Law Center.  Settlement

10  Agreement, ¶ 10(d).

11       All compensation disputes will be resolved and decided by the Settlement

12  Administrator after conferring with counsel for the Parties, and the Settlement

13  Administrator's decision on all compensation disputes will be final and non-

14  appealable.  Settlement Agreement, ¶ 10(e).  Under no circumstance will the Gross

15  Settlement Amount or any portion thereof revert back to Defendants.  Settlement

16  Agreement, ¶¶ 10(d), 11(d).

17  **(iv)   Attorneys' Fees, Costs, and Enhancement Fees**

18       Class Counsel may apply for, and Defendants will not oppose, an award of

19  attorneys' fees in an amount up to one-third (33-1/3%) of the Gross Settlement

20  Amount (five hundred sixteen thousand six hundred sixty-six dollars and sixty-six

21  cents (or $516,666.66)), and costs of up to $20,000.00, all of which shall be paid

22  exclusively from the Gross Settlement Amount.  In the event that Class Counsel are

23  not awarded their requested fees and costs, in whole or in part, no non-awarded fees

24  or costs shall revert to Defendants, instead will revert to the Net Settlement Amount.

25  Settlement Agreement, ¶ 10(e).

26       The Class Representative Enhancement is in addition to the Plaintiffs'

27  individual settlement award.  In exchange for the Class Representative

28  Enhancement (up to but not to exceed $2,000.00 each), the Class Representatives

21

1   must execute a general release in favor of Defendants.  Defendants will not oppose

2   each Plaintiffs' enhancement petition so long as it does not exceed $2,000.00.  In

3   the event that the Class Representatives are not awarded the requested $2,000.00, in

4   whole or in part, no part of the requested award shall revert to Defendants, but

5   instead shall revert to the Net Settlement Amount.  Settlement Agreement, ¶ 10(e).

6                    **(v)     Costs of Settlement Administration**

7            The Settlement Administrator shall be entitled to payment, from the Gross

8   Settlement Amount, for the reasonable costs of administering this settlement.  In the

9   event that the Settlement Administrator's reasonable costs of administering this

10  settlement exceed $15,000.00, the Settlement Administrator shall file a declaration

11  with the Court explaining the basis for the costs above $15,000.00 and seeking

12  approval for payment of the additional reasonable costs out of the amount remaining

13  from the Net Settlement Amount.  The Settlement Administrator shall not be paid

14  for costs above $15,000.00 absent Court approval.  Settlement Agreement, ¶ 12.

15                  **(vi)    Administration of Notice and Opt-Out Process**

16           This Settlement is not a claims-made settlement.  Putative Class Members do

17  not need to submit claims in order to participate in the Settlement, however,

18  Putative Class Members will be strongly encouraged to submit a Verified Claim

19  Form in order to receive a more accurate distribution.  The Notice and Verified

20  Claim Form, attached to the Settlement Agreement as Exhibit "A" and Exhibit "A-

21  1", shall be sent by the Settlement Administrator to the Putative Class Members, by

22  first class mail.  The Notice shall notify each Putative Class Member of the

23  pendency of this suit, the nature of the claims, and the fact of partial settlement.  In

24  addition, the Notice will encourage Putative Class Member to submit a Verified

25  Claim Form, attesting to the number of days they performed work for Defendants

26  Macy's and Eletto between July 1, 2012 and December 27, 2014.  Settlement

27  Agreement, ¶ 14.

28  ///

Within seven (7) calendar days of the Preliminary Approval Date, Defendant Eletto will provide the Settlement Class's identifying information to the Settlement Administrator.  In the event there is missing contact information, the Parties will make their best efforts to obtain and provide the approximate, last-known data/information.  Within twenty-one (21) calendar days of the Preliminary Approval Date, the Settlement Administrator will mail the Notice and Verified Claim Form to the Settlement Class.  Settlement Agreement, ¶ 14.

Putative Class Members will have forty-five (45) days in which to postmark objections, disputes, and/or requests for exclusion.  The Settlement Administrator will skip-trace returned mail and re-mail within five days.  Under no circumstances will this extend the period for post-marking objections, disputes, and/or requests for exclusion claims by more than an additional fifteen (15) days.  Settlement Agreement, ¶ 16.  If an envelope so mailed has not been returned within thirty (30) days of the mailing, it will be presumed that the Putative Class Member received the Notice.  Settlement Agreement, ¶ 17.

### (vii)   Disputes, Requests for Exclusion and Objections

The Notice shall provide forty-five (45) days from the mailing date of the Notice for each Putative Class Member to (1) submit a Verified Claim Form; (2) opt out of the Settlement; or (3) object to the settlement.  Settlement Agreement, ¶ 21.

As Putative Class Members will not be allocated an initial number of days worked, but will instead be given an opportunity to submit a Verified Claim Form, disputes can only arise if the Settlement Administrator and the Parties make a reasonable adjustment to the figure claimed on a Verified Claim Form.  In such a circumstance, the Settlement Administrator will have the authority to resolve a dispute stemming from a reasonable adjustment made on the Putative Class Member's Verified Claim Form.  Settlement Agreement, ¶ 15.

///

///

Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO

Unless otherwise agreed to in writing by counsel for Plaintiffs and Defendants, no opt out request will be accepted if postmarked to the Settlement Administrator more than forty-five (45) calendar days after the date the Notice was mailed to the Putative Class Member.  All original opt out requests shall be sent directly to the Settlement Administrator at the address indicated on the Notice and the Settlement Administrator will forward such opt out requests to Class Counsel and Defense Counsel.  The Settlement Administrator will certify jointly to Class Counsel and Defense Counsel the number of all Putative Class Members who have submitted opt out requests, objections and/or disputes.  During the forty-five (45) day period after the date the Notice is mailed to Putative Class Members, the Settlement Administrator will provide this information beginning on the 15th day after the Notice is mailed, and will update this information every following seven (7) days.  Settlement Agreement, ¶ 22.

No later than twenty-one (21) calendar days prior to the Final Approval Hearing, the Settlement Administrator will submit a list to Class Counsel and Defense Counsel of all timely, valid opt out requests, disputes and all objections received from Putative Class Members.  Settlement Agreement, ¶ 23.  Defendants have the option of withdrawing from the settlement if seven percent (7 %) or more of the Putative Class Members opt out of the Settlement.  Settlement Agreement, ¶ 24.

Any Putative Class Member wishing to object to the Court's approval of this Settlement shall file any such written objections and/or memorandums of points and authorities in support thereof with the Court and shall serve Class Counsel and Defense Counsel no later than forty-five (45) days from the mailing of the Notice.  Settlement Agreement, ¶ 25.

A Putative Class Member who has submitted an opt-out request may not submit any objections to the Settlement.  Any Putative Class Member who fails to file a timely written objection shall be foreclosed from objecting to this Settlement.

Settlement Agreement, ¶ 25.  Class Counsel and Defense Counsel shall file any response to any objections filed by objecting Putative Class Members at least seven (7) calendar days before the Final Approval Hearing.  Settlement Agreement, ¶ 26.

### (vii)   Release of Claims

Upon the Final Approval Date, Putative Class Members who do not timely opt out shall fully release and discharge the Releasees from all claims, whether known or unknown, that were alleged or asserted, or that could have been alleged or asserted based upon the factual allegations set forth in the operative complaint, in the Action, or in which any way arose out of or relate to the services they performed for Defendants Macy's and Eletto at the Macy's Logistics and Operations distribution center, located at 1208 Whipple Road, Union City, California 94587 from July 1, 2012 to December 27, 2014.  Settlement Agreement, ¶¶ 29-31.

## VII.  CONCLUSION

For all of the reasons set forth above, Plaintiffs' respectfully request that this Court certify the proposed class for settlement, and to grant preliminary approval of the partial class action settlement.

Dated: March 1, 2017            LAW OFFICES OF THOMAS W. FALVEY

JML LAW, APLC

By:    /s/ Armand R. Kizirian
       ARMAND R. KIZIRIAN
       Attorneys for Plaintiffs and the Putative Class

25

Notice of Motion and Motion for Preliminary Approval of Partial Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO