MICHAEL H. BOYAMIAN, SBN 256107
michael@boyamianlaw.com
ARMAND R. KIZIRIAN, SBN 293992
armand@boyamianlaw.com
**BOYAMIAN LAW, INC.**
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:  (818) 547-5300
Facsimile:   (818) 547-5678

Attorneys for Plaintiffs RAMON GARCIA,
VICTOR RAMIREZ, ADRIAN VALENTE,
MARIO PINON, and MYNOR CABRERA,
Individually and on Behalf of All Similarly Situated Individuals

*Additional Counsel Listed on Following Pages*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

RAMON GARCIA, an individual;
VICTOR RAMIREZ, an
individual; ADRIAN VALENTE,
an individual; MARIO PINON, an
individual; MYNOR CABRERA,
an individual; Individually, and on
Behalf of All Similarly Situated
Individuals

        Plaintiffs,

        vs.

MACY'S WEST STORES, INC.,
an Ohio corporation; JOSEPH
ELETTO TRANSFER, INC., a
New York corporation; XPO
LOGISTICS, LLC, an Ohio
corporation; and DOES 1 through
25, Inclusive,

        Defendants.

Case No: 3:16-cv-04440-WHO
[The Honorable William H. Orrick]

**CLASS ACTION**

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: June 26, 2019
Time: 2:00 p.m.
Courtroom: 2 (17th Floor)

[CONCURRENTLY FILED WITH DECLARATION OF MICHAEL H. BOYAMIAN ISO MOTION FOR PRELIMINARY APPROVAL; [PROPOSED] ORDER]

*Action Filed*:  July 1, 2016
*Complaint Removed:* August 5, 2016
*Trial:* None currently Scheduled

1

**LAW OFFICES OF THOMAS W. FALVEY**
Thomas W. Falvey (SBN 65744)
550 North Brand Boulevard, Suite 1500

2

Glendale, California 91203-1922
Telephone:  818.547.5200

3

Facsimile:   818.500.9307
E-mail:      thomaswfalvey@gmail.com

4

5

JOSEPH M. LOVRETOVICH, SBN 73403
JML@jmllaw.com
MYTHILY SIVARAJAH, SBN 252494

6

mythily@jmllaw.com
**JML LAW, APLC**

7

5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, California 91367

8

Telephone:  (818) 610-8800
Facsimile:   (818) 610-3030

9

10

Attorneys for Plaintiffs RAMON GARCIA,
VICTOR RAMIREZ, ADRIAN VALENTE,

11

MARIO PINON, and MYNOR CABRERA,
Individually and on Behalf of All Similarly Situated Individuals

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

**NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Wednesday, June 26, 2019 at 2:00 p.m., or as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William H. Orrick, Plaintiffs Adrian Valente, Mario Pinon and Mynor Cabrera ("Plaintiffs") will and hereby do move this Court for an Order Granting Preliminary Approval of Partial Class Action Settlement. Plaintiffs' Motion is based on this Notice and the accompanying Memorandum of Points and Authorities and exhibits thereto; the Declaration of Michael H. Boyamian, and the respective exhibits thereto; the Proposed Order; this Court's files and records; and any other evidence, briefing, or argument properly before this Court.

Plaintiffs filed this class action lawsuit to address a common occurrence in today's workplace during a time of high unemployment: the claim by employers that individuals are not employees, but independent contractors. Plaintiffs alleged that they, and the class they seek to represent, are employees of Macy's West Stores, Inc. ("Macy's"), and XPO Last Mile, Inc. ("XPO") (collectively "Defendants"), and the Defendants consistently failed to pay the Plaintiffs and their fellow truck drivers and helpers for all hours worked, and that they were not provided meal and rest periods.

Plaintiffs' counsel contacted numerous truck drivers and helpers and they verified what Plaintiffs were claiming, namely, that they were not being paid what they were owed, and that they were not being provided with the meal and rest breaks to which they were entitled.

Defendants vehemently deny all allegations and deny that they are liable, in any way, to Plaintiffs or the class that they seek to represent. Defendants assert that Plaintiffs, and the class that they seek to represent, were employed by the

1

businesses that XPO LM contracted with to provide delivery services and that the Plaintiffs, and the class that they seek to represent, were not employed by either of the Defendants.

This settlement follows this Court's final approval of a partial settlement the Court previously entered, which encompassed the time period of July 1, 2012 until Defendant Joseph Eletto Transfer, Inc. no longer operated the Macy's warehouse, *i.e.*, December 27, 2014.  This partial class action settlement covers the remaining time period from December 28, 2014, up until the Court grants preliminary approval of the proposed class action settlement for which Plaintiffs now seek the Court's approval.

Class Counsel reviewed a substantial amount of documents, engaged in protracted discovery efforts, and deposed several key XPO LM and Macy's managerial figures.

Plaintiffs, who ask this Court to appoint them as Class Representatives, have negotiated a settlement that, if approved by the Court, will result in the payment of three million five hundred thousand dollars ($3,500,000.00) to settle the class claims at issue here.  Plaintiffs now seek preliminary approval of this class action settlement for the aforementioned remaining class period.

Plaintiffs believe the settlement is fair, reasonable, and adequate.  They respectfully request that the Court review the Settlement Agreement attached as Exhibit "1" to the Declaration of Michael H. Boyamian ("Boyamian Dec."), and enter an order:

(1) granting preliminary approval of the proposed Settlement;

(2) conditionally certifying the Settlement Class for settlement purposes;

(3) approving the form, content and method of distribution of the Notice of Class Action And Class Certification for Settlement Purposes and Verified Claim Forms;

2

(4) appointing Boyamian Law, Inc., Law Offices of Thomas W. Falvey, and JML Law, APLC as Class Counsel;

(5) appointing plaintiffs Adrian Valente, Mario Pinon and Mynor Cabrera as class representatives;

(6) appointing KCC Class Action Services, LLC as Settlement Administrator;

(7) setting a filing deadline for Class Counsel's motion requesting attorneys' fees, costs, enhancement awards to Plaintiffs, which the Plaintiffs respectfully request occur prior to the deadline for Class Members to file objections; and

(8) scheduling a hearing regarding Class Counsel's request for attorney's fees and costs, enhancement awards to Plaintiffs, and final approval of the proposed Settlement.

Dated May 13, 2019

Respectfully Submitted,
BOYAMIAN LAW, INC.
LAW OFFICES OF THOMAS W. FALVEY
JML LAW, APLC


By: /s/ Michael H. Boyamian
      Michael H. Boyamian
      Attorneys for Plaintiffs and Putative Class

3

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................3

II.     DEFINITIONS.........................................................................................4

III.    FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS............................7

IV.     PROCEDURAL BACKGROUND.................................................................7

V.      TERMS OF THE SETTLEMENT ...............................................................9

VI.     LEGAL ARGUMENT...............................................................................9

        A.      Preliminary Approval of the Settlement is Appropriate. .......................................9

                1.      The Settlement is the Product of Informed, Non-Collusive

                        Negotiation.............................................................................................10

                2.      The Risks of Further Litigation Support Preliminary Approval................11

                3.      The Settlement Falls Within the Range of Possible Approval. .................13

                4.      Plaintiffs' Request for Attorneys' Fees and Costs is Reasonable.............15

                5.      Plaintiffs' Proposed Enhancement Awards Are Reasonable. ...................17

                6.      The Settlement Administrator Costs are Reasonable................................18

        B.      The Class Should be Provisionally Certified. .........................................................18

                1.      Standards Governing Approval of Settlement Classes. ...........................19

                2.      The Class Satisfies the Requirements of Rule 23(a)................................19

                3.      The Class Meets the Requirements of Rule 23(b)(3)...............................21

                4.      Summary of the Terms of the Proposed Settlement  Agreement and

                        Release of Claims. ..................................................................................22

VII.    CONCLUSION........................................................................................30

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**

# TABLE OF AUTHORITIES

## CASES

*Bautista v. Harvest Management Sub*,

(C.D. Cal. 2013) No. 2:12-cv-10004 ................................................................14

*Campbell v. PricewaterhouseCoopers, LLP*

(E.D.Cal. 2012) 287 F.R.D. 615 .......................................................................18

*Ching v. Siemens Indus.*,

(N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 169279 .............................................14

*Custom LED, LLC v. eBay, Inc.*,

(N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 122022.............................................21

*Dynamex Operations West, Inc. v. Superior Court*,

4 Cal. 5th 903 (2018) .......................................................................................11

*Hanlon v. Chrysler Corp.*

(9th Cir. 1998) 150 F.3d 1011........................................................... 17-21

*Harris v. Vector Mktg. Corp.*

(ND. Cal. 2011) 2011 U.S. Dist. LEXIS 48878 ................................................9

*In re Heritage Bond Litig.*,

No. 02-ML-1475-DT(RCX), 2005 WL 1594389 ...............................................15

*In re Med. X-Ray Film Antitrust Litig.*,

No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ..........................15

*In re Mercury Interactive Securities Litigation*

(9th Cir. 2010) 618 F.3d 988..........................................................................15

*In re Tableware Antitrust Litig.*

(N.D. Cal. 2007) 484 F.Supp.2d 1078 ...........................................................9, 12

*Knight v. Red Door Salons, Inc.*,

(N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 11149 ...............................................14

*Mazza v. Am. Honda Motor Co., Inc*.

(9th Cir. 2012) 666 F.3d 581...........................................................................18

1

*Officers for Justice v. CM! Serv. Comtnn of City & Cnty. of San Francisco*
   (9th Cir. 1982) 688 F.2d 615...................................................................9, 12

*Ogbuehi v. Comcast of California/Colorado/Florida/ Oregon, Inc.*,
   No. 2:13-CV-00672-KJM, 2015 WL 3622999 (E.D. Cal. June 9, 2015)...........15

*Rodriguez v. W. Publ'g Corp.*,
   (9th Cir. 2009) 563 F.3d 948..............................................................15

*Scott v. Bimbo Bakeries USA*
   (ED. Pa. 2014) No. 2:10-cv-03154 ....................................................13

*Torrisi v. Tucson Elec. Power Co.*
   (9th Cir. 1993) 8 F.3d 1370.................................................................9

*Van Vranken v. Atlantic Richfield Co.*
   (N.D. Cal. 1995) 901 F.Supp. 294 .....................................................16

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) .......................................................15

*Vero v. Aaron Bros.*,
   (N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 178511.............................................14

*Villegas v. J.P. Morgan Chase & Co.*,
   (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704 .......................................10, 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043, 1048 (2002)..............................................................15

*Wang v. Chinese Daily News, Inc.*
   (C.D. Cal. 2005) 231 F.R.D. 602 .......................................................21

**STATUTES**

Federal Rules of Civil Procedure, Rule 23 .................................................17, 18, 19

**TREATISES**

Manual for Complex Litigation, Fourth §§ 21.632-33 ..........................................17

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Adrian Valente, Mario Pinon and Mynor Cabrera ("Plaintiffs") seek preliminary approval of a settlement on behalf of themselves and the Putative Class comprised of all individuals who performed services as Drivers and/or Helpers delivering Macy's products and/or furnishings, who did not sign a Delivery Service Agreement with Defendants Macy's West Stores, Inc., and/or XPO Last Mile, Inc. ("Defendants" or "Macy's" or "XPO") (Plaintiffs and Defendants together as the "Parties"), and who were tendered loads at the location identified as the Macy's Logistic and Operations Distribution Center, 1208 Whipple Road, Union City, California 94587, between December 28, 2014 and the Preliminary Approval Date ("Putative Class" or "Putative Class Members").

Plaintiffs allege that they and the Putative Class Members were misclassified as independent contractors while performing services for Defendants, and therefore were denied the protections of the California Labor Code.  Plaintiffs therefore alleged claims for unpaid wages, minimum wages, overtime pay, interest thereon, wage statement and waiting time penalties, and other legal and equitable relief, as well as reasonable attorneys' fees and costs.

The main terms of the Settlement are as follows:

a.     XPO LM agreed to pay three million five hundred thousand dollars and zero cents ($3,500,000.00) ("Gross Settlement Amount") on behalf of Defendants to settle the Action, which shall include the amounts paid to Putative Class Members, court-approved attorneys' fees and costs, the class representatives as enhancement awards, the LWDA, and court-approved costs of settlement administration.

b.     Putative Class Members will receive a portion of the Net Settlement Amount as long as they do not opt out of the Settlement by submitting valid and timely exclusion forms to the Settlement Administrator, as set forth below and as

3

explained in the Notice of Class Action Settlement ("Notice").  Putative Class Members will also be given the opportunity to submit a Verified Claim Form in order to specify the number of days they worked for Defendants during the period covered by this settlement.

The Settlement Agreement, including all exhibits, is attached as Exhibit "1" to the Declaration of Michael H. Boyamian in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Boyamian Dec."), filed herewith.

## II.    DEFINITIONS

a.    "Action" refers to the state court action filed in the Superior Court of California, County of Alameda, entitled "RAMON GARCIA, an individual, VICTOR RAMIREZ, an individual, ADRIAN VALENTE, an individual, MARIO PINON, an individual, and MYNOR CABRERA, an individual, Individually and on Behalf of All Similarly Situated Individuals, Plaintiffs, v. MACY'S WEST STORES, INC., an Ohio corporation, JOSEPH ELETTO TRANSFER, INC., a New York corporation, XPO LOGISTICS, LLC, an Ohio corporation, and DOES 1 through 25, Inclusive, Defendants, Case Number RG16821800.  The Action was removed to federal court by XPO Last Mile, Inc. on August 5, 2016, Case Number 4:16-cv-04440-YGR.  On September 6, 2016, the Action was deemed related to the *Carter v. XPO Last Mile, Inc.* (Case Number 16-cv-01231-WHO) case and thereafter was reassigned to the Honorable William H. Orrick.

b.    "Class Period" shall mean from December 28, 2014 through and up to the time this Court enters preliminary approval of the Settlement.

c.    "Class Representative(s)" shall refer to Plaintiffs Adrian Valente, Mario Pinon, and Mynor Cabrera.

d.    "Class Representative Enhancement" shall refer to a payment to the Class Representatives for their services in this Action and as consideration for their general release of all individual claims against Defendants.  This payment is

4

subject to Court approval and shall not exceed $5,000 for each Class Representative.

e.  "Court" refers to the United States District Court, Northern District of California, the Honorable William H. Orrick presiding.

f.  "Defense Counsel" shall refer to Fraser A. McAlpine and Adam L. Lounsbury of Jackson Lewis PC for both XPO Last Mile, Inc. and Macy's West Stores, Inc., and Michael C. Christman of Macy's Law Department for Defendant Macy's West Stores, Inc.

g.  "Gross Settlement Amount" means the sum of Three Million Five Hundred Thousand dollars and zero cents ($3,500,000.00) that XPO LM agrees to pay on behalf of Defendants to settle this lawsuit and shall include attorneys' fees and costs (not to exceed 33 1/3% of the Gross Settlement Amount in attorneys' fees and $50,000 in attorney costs), the amounts distributed to Settlement Class Members from the Net Settlement Amount, payment to the Labor Workforce and Development Agency for Plaintiffs' Cause of Action for Penalties under the Private Attorneys General Act (hereinafter "PAGA Payment"), the Class Representative Enhancements, and Settlement Administrator Costs.  In no event shall Defendants pay or owe more than Three Million Five Hundred Thousand dollars and zero cents ($3,500,000.00) to fund the Gross Settlement Amount.

h.  "Net Settlement Amount" shall be the remainder of the Gross Settlement Amount after deductions from the Gross Settlement Amount for attorneys' fees and costs (not to exceed 33 1/3% of the Gross Settlement Amount in attorneys' fees and $50,000 in costs), the Class Representative Enhancements, PAGA Payment, and Settlement Administrator Costs. The Net Settlement Amount shall be established by the Settlement Administrator for the benefit of Settlement Class Members and Settlement Class Members shall be paid from the Net Settlement Amount.

i.  "Notice" shall mean the Notice of Class Action Settlement,

5

substantially in the form attached as Exhibit "A" to the Settlement Agreement, which is itself attached as Exhibit "1" to the Boyamian Declaration.  The Settlement Administrator will mail the Notice to each Putative Class Member explaining the terms of the Settlement.  Exhibit "A" is the notice approved by the Parties and subject to Court approval.

j.      "Plaintiffs' Counsel" shall collectively refer to Michael H. Boyamian, and Armand R. Kizirian of Boyamian Law, Inc., Thomas W. Falvey of the Law Offices of Thomas W. Falvey, and Joseph M. Lovretovich and Mythily Sivarajah of JML Law, APLC.

k.      "Preliminary Approval Date" means the date the Order Granting Preliminary Approval of Proposed Class Action Settlement is entered by the Court.

l.      "Putative Class" or "Putative Class Member" are defined as all individuals who performed services as Drivers and/or Helpers delivering Macy's products and/or furnishings, who did not sign a Delivery Service Agreement with Defendants Macy's West Stores, Inc., and/or XPO Last Mile, Inc., and who were tendered loads at the location identified as the Macy's Logistic and Operations Distribution Center, 1208 Whipple Road, Union City, California 94587, between December 28, 2014 and the Preliminary Approval Date.

m.      "Settlement" or "Settlement Agreement" shall mean the Joint Stipulation of Class Action Settlement and Release.

n.      "Settlement Administrator" shall be a third-party claims administrator agreed upon by the Parties to perform the customary duties of a settlement administrator including, but not limited to, the duties enumerated in this Settlement Agreement.

o.      "Settlement Administrator Costs", as outlined in the Settlement Agreement marked as Exhibit "1" to the Boyamian Declaration, shall mean the total of all costs actually incurred by the Settlement Administrator in order to make

6

all payments owed to Settlement Class Members and otherwise perform the duties reasonably necessary to administer the Settlement.

p.      "Settlement Class Member" shall mean a Putative Class Member who does not timely opt out of the Settlement and shall include the Class Representatives.

## III.   FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS

Defendant Macy's West Stores, Inc. owns and operates retail department stores in California under the name "Macy's."  XPO LM is a Georgia corporation doing business in California.  It  provides logistics services for Macy's, including arranging for the delivery of certain consumer products and home furnishings that are sent out for delivery to consumers from the Macy's Logistic and Operations Distribution Center,1208 Whipple Road, Union City, California 94587.

There are approximately 300 Putative Class Members who currently or formerly delivered those products and furnishings as Drivers of or Helpers on the trucks making deliveries tendered at the Whipple Road location.  Declaration of Michael H. Boyamian in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Boyamian Decl."), ¶ 16.  Plaintiffs claim that those Drivers and Helpers were Defendants' employees and that they were not properly paid wages under California law.  Defendants maintain that those Drivers and Helpers were not their employees; for that reason and others, the Defendants contend that they cannot be liable for the allegedly unpaid wages, penalties, or other damages, that are sought in this action.

## IV.   PROCEDURAL BACKGROUND

On July 1, 2016, Plaintiffs filed this case in Alameda County Superior Court on behalf of California residents who are or have been utilized as Drivers and Helpers by Defendants during the period commencing July 1, 2012 through the present.  Boyamian Decl., ¶ 7.

The Complaint states the following causes of action: (1) Unpaid Wages; (2) Failure to Pay Minimum Wage; (3) Failure to Pay Overtime Compensation; (4) Failure to Provide Meal and Rest Periods; (5) Failure to Furnish Accurate Wage and Hour Statements; (6) Waiting Time Penalties; (7) Indemnification; (8) Conversion; and (9) Unfair Competition.

On August 5, 2016, Defendant XPO removed this case to the United States District Court for the Northern District of California. On September 6, 2016, the case was deemed related to the *Carter v. XPO Last Mile, Inc.,* case number 3:16-cv-01231-WHO, and reassigned to the Honorable William H. Orrick. On January 3, 2017, *Kramer v. XPO Last Mile, Inc.*, case number 3:16-cv-07039-WHO was also deemed to be related to the Carter action and this action, and therefore reassigned to the Honorable William H. Orrick. The parties of these three related actions have since been coordinating with each other, to a limited extent, in moving this litigation forward. The three cases, however, remain distinct and have not been consolidated.

Plaintiffs' Counsel has conducted a thorough investigation into the relevant facts and legal claims. Plaintiffs' Counsel closely reviewed the data provided by Defendants, and consulted with an expert, in advance of mediation to determine the amount of damages potentially available to Putative Class Members. Boyamian Decl., ¶¶ 15-21. Class Counsel also contacted and extensively interviewed Putative Class Members.

Mediation was conducted with private neutral Michael Dickstein on two occasions: October 25, 2018 in San Francisco, California and November 13, 2018 in Toronto, Ontario, Canada. Counsel for the Parties fully briefed their positions to the mediator. After two, full days of extensive arms-length negotiations among the Parties, the Parties were able to reach an agreement in principal. Following the mediation, the parties continued to negotiate extensively and the Parties finalized the terms of the agreement in late March of 2019. Boyamian Decl., ¶ 10.

8

1   This class action settlement follows an earlier class action settlement in this

2   case.  The prior settlement, which this Court approved, covers the portion of the

3   class period, from December 28, 2014 to the present.  This Settlement

4   encompasses the second half of the statutory limitations period, when Defendant

5   Eletto ceased arranging deliveries at the Macy's warehouse and when Defendant

6   XPO Last Mile, Inc., began arranging deliveries of Macy's products from that

7   location, *i.e.*, from December 28, 2014, through to the Preliminary Approval Date.

8   Boyamian Decl., ¶¶ 9-10; Settlement Agreement, ¶ 1(c) and (s).

9   Based on an independent investigation and evaluation, Plaintiffs' Counsel

10   are of the opinion that the Settlement with Defendants for the consideration and on

11   the terms set forth in the Settlement Agreement is fair, reasonable, and adequate,

12   and is in the best interests of the Putative Class Members, in light of all known

13   facts and circumstances, including the risk of significant delay, the risk that if this

14   matter is litigated a class may not be certified by the Court or that it may later be

15   decertified, the risk that Defendants will prevail on their defenses, as well as

16   potential appellate issues.  Boyamian Decl., ¶¶ 11-15.

17   **V.   TERMS OF THE SETTLEMENT**

18   The complete Settlement Agreement, along with its exhibits, is attached as

19   Exhibit "1" to the Declaration of Michael H. Boyamian, filed concurrently

20   herewith.

21   **VI.   LEGAL ARGUMENT**

22   **A.   Preliminary Approval of the Settlement is Appropriate.**

23   The dismissal or compromise of a class action requires court approval.  Fed.

24   R. Civ. P. 23(e).  Approval involves a two-step process in which the Court first

25   determines whether a proposed class action settlement warrants preliminary

26   approval and, if so, directs that notice be sent to proposed class members, reserving

27   closer scrutiny for the final approval hearing.  *See Harris v. Vector Mktg. Corp.*

28   (ND. Cal. 2011) 2011 U.S. Dist. LEXIS 48878, 23-24.  Approval of a class action

9

settlement rests in the discretion of the Court, which should ultimately determine whether the settlement is fundamentally fair, adequate, and reasonable to the Class. *See Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370, 1375.

A court should grant preliminary approval of a settlement if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *See In re Tableware Antitrust Litig*. (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1079.  A court should also apply its discretion in light of the judicial policy favoring settlement of complex class action litigation.  *See, e.g., Officers for Justice v. CM! Serv. Comtnn of City & Cnty. of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625 ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation. . .").  As discussed below, application of the relevant factors to this case supports preliminary approval.

1. The Settlement is the Product of Informed, Non-Collusive Negotiation.

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive.  *See Villegas v. J.P. Morgan Chase & Co.*, (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704, *1546.  That is what happened here.

During the past two years, the parties exchanged significant amounts of class discovery, and each conducted an extensive investigation of the factual allegations involved in this case.  Numerous depositions were taken, including the depositions of at least six corporate officers of Defendants that were scattered throughout the country.  Boyamian Decl., ¶¶ 12-14, 25-29, 31.

Additionally, in preparation for and during the mediation, the parties apprised the other of their respective factual contentions, legal theories and

10

defenses.  Consequently, extensive and informed, arms-length negotiations occurred during two, full-day mediation sessions with experienced mediator, Michael Dickstein.  Those sessions were held on October 25, 2018, and November 13, 2018.  The Parties were able to reach a Settlement that was based upon the mediator's advice and guidance, Class Counsel's experience in the *Fuentes v. Macy's* litigation, and the information and negotiations that informed the earlier *Garcia, et al. v. Macy's* settlement involving Defendant Eletto. Although the Parties agreed upon a settlement figure on November 13, 2018, negotiations regarding the the specific terms of the agreement continued into March of 2019. Boyamian Decl., ¶ 10.

Here, the Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case.  The settlement was the product of well-informed, non-collusive negotiations and mediation.

2.  <u>The Risks of Further Litigation Support Preliminary Approval.</u>

Plaintiffs allege that Defendants improperly classified the Putative Class Members as independent contractors exempt from minimum wage, overtime, meal and rest period laws, and the wider protections of California Labor Code § 1171. Although Plaintiffs believe they have a strong case, further litigation carries numerous risks and obstacles for Plaintiffs and Putative Class Members, as described below.  Boyamian Decl., ¶ 14.

First, Plaintiffs may not be able to certify the Putative Class under Rule 23(b).  Plaintiffs largely rely on the Defendants' uniform business practices that treat the Putative Class Members as non-employees or independent contractors to establish both commonality and predominance.  Plaintiffs will also argue that other common issues also predominate, such as whether the job expectations and degree of control exercised by Defendants upon the Drivers and Helpers are uniform across the Class.

1    Plaintiffs believe that Drivers and Helpers have strong claims that they were

2 misclassified as independent contractors because they were under the constant

3 supervision and control of Defendants throughout their daily activities, among

4 other things, wearing uniforms, and being told to inform customers that they were

5 making deliveries on behalf of Defendants. Boyamian Decl., ¶ 13. Moreover,

6 Plaintiffs allege that the Putative Class Members were also evaluated and graded

7 for their delivery performance or effectiveness through a variety of metrics

8 implemented by Defendants. Plaintiffs report that those metrics determined

9 whether Drivers and Helpers, were meeting Defendants' expectations or needed to

10 be coached, counseled, or disciplined.

11    Plaintiffs' contend, the California Supreme Court's recent *Dynamex*

12 *Operations West, Inc. v. Superior Court* decision in April 2018 provided further

13 legal support to Plaintiff's misclassification claim. *Dynamex Operations West, Inc.*

14 *v. Superior Court*, 4 Cal. 5th 903 (2018). In *Dynamex*, the Court found that the

15 defendant was unable to meet its burden under the second prong of the 'ABC' test.

16 *Id*. at 965. There, a class of delivery drivers had alleged that they had been

17 misclassified as independent contractors by Dynamex, *i.e.* the hiring entity. *Id*.

18 The Court concluded that Dynamex's entire business was that of a delivery service

19 because, "[a]s a general matter, Dynamex obtains the customers for its deliveries,

20 sets the rate that the customers will be charged, notifies the drivers where to pick

21 up and deliver the packages, tracks the packages, and requires the drivers to utilize

22 its tracking and record-keeping system." *Id*. at 965-966.

23    Plaintiffs contend, these facts are analogous to the services Class Members

24 provided to XPO and Macy's. Defendants maintain that *Dynamex* does not pave

25 the way to class certification in this case, and contend that they will overcome the

26 ABC Test and prove that the Putative Class Members were not employees of either

27 Defendant, if the case is tried.

28

Even if Plaintiffs can show that Drivers and Helpers were not independent contractors, Defendants can assert numerous defenses regarding liability and damages.  For instance, Defendants contend that the businesses with which they contracted to perform delivery services employed Putative Class Members.  With regard to Plaintiffs' claims for wage statement and waiting time penalties, both claims are derivative of Plaintiffs' primary wage claims.  Thus, Plaintiffs would recover nothing for themselves, or the Class, if the underlying claims are unsuccessful.  Boyamian Decl., ¶ 21.

The Defendants' positions in this litigation may result in no recovery for Plaintiffs or the Putative Class Members or protracted appeals and significant risks to meaningful recovery for the Putative Class Members.  Consequently, the benefits of the settlement greatly outweigh the risks of continuing to litigate the issues in this case.

### 3.   The Settlement Falls Within the Range of Possible Approval.

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer", while taking into account the risks of continuing litigation.  *See In re Tableware Antitrust Litig.* 484 F.Supp.2d at 1080.  Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk, the Parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624, (internal quotations and citation omitted). "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas*, 2012 -U.S. Dist. LEXIS 166704 at 96 (internal quotations and citations omitted).

Here, the Settlement is fair, adequate, and well within the range of possible approval. Without conceding that any adverse rulings would be justified, Plaintiffs recognize the risk of such outcomes as described above. If Defendants were able to prove that the Putative Class Members are not employees or properly classified as independent contractors, then the value of the case would be zero. All of Plaintiffs' claims and damages rely upon this threshold issue. Boyamian Decl., ¶¶ 14, 21.

If Plaintiffs are able to demonstrate that Drivers and Helpers are employees, not independent contractors, then the value of Plaintiffs' claims depend principally on the number of hours worked by Putative Class Members, the frequency at which meal and rest breaks were missed, and derivative penalties. Plaintiffs' calculate damages as ranging from $0, if they cannot prevail on the threshold independent contractor versus employee issue, to approximately $15,000,000, if Plaintiffs are able to prevail on all claims. Boyamian Decl., ¶¶ 15-19.

In order to properly value the claims at issue, however, these figures must be reduced according to the likelihood that Plaintiffs will prevail on their motion for class certification. Moreover, even if class certification is granted, the figures must be further be reduced according to the likelihood that Plaintiffs will ultimately be able to prevail on the merits. As set forth above, for the purposes of settlement only, Plaintiffs acknowledge that this case may face significant hurdles at both the certification and the liability phases of the litigation. Boyamian Decl., ¶ 23.

Based on the foregoing, the Settlement will result in a fair and reasonable award to Putative Class Members in light of the litigation risks. The net amount to be paid to the Class under the proposed Settlement (after payment of Class Counsel's attorneys' fees and costs, Settlement Administration Costs, and the Class Representative Enhancements), will be at least $2,249,000.00. The average Putative Class Member payout under this amount would be approximately $7,500.00. *Id*. Thus, the Settlement avoids the risks of litigation while ensuring

14

that Settlement Class Members receive substantial consideration for a release of their claims.  The Settlement also affords relief to Settlement Class Members who likely would not have pursued individual claims. *Id.*

Under the circumstances, the amount of the settlement is fair, adequate and reasonable.  *See Scott v. Bimbo Bakeries USA* (ED. Pa. 2014) No. 2:10cv03154 (ECF No. 174) (approving a settlement of wage and hour claims for payments of $900 to each current driver and $450 to each former driver, plus $12,500 enhancement payments); *Vero v. Aaron Bros.*, (N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 178511 (granting preliminary approval of settlement of wage and hour claims where the average recovery would be between approximately $28 and $45); *Bautista v. Harvest Management Sub*, (C.D. Cal. 2013) No. 2:12-cv-10004 (ECF No. 60) (preliminarily approving a $2.2 million settlement of wage-and-hour violation claims of 14,000-member class).

The plan of allocation is also fair and reasonable.  The Settlement provides that the settlement fund shall be allocated based on the number of days Putative Class Members worked during the Class Period, a plan of allocation that is more precise than a weekly allocation method.  *See, e.g., Ching v. Siemens Indus.*, (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 169279, at *19 (granting preliminary approval of settlement and finding that weeks worked was a reasonable basis for allocating individual payments).  Those Settlement Class Members who return verified claim forms will get paid in an amount of their pro rata share of the settlement fund; those who do nothing will take equally with all other Settlement Class Members who do nothing.  Either way, the Settlement Class Members will be treated equitably and given an option as to how their shares will be calculated.

4. Plaintiffs' Request for Attorneys' Fees and Costs is Reasonable.

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees in an amount not to exceed $1,166,666.67 (33-1/3% of the Settlement Amount) and an award of litigation

15

expenses in an amount not to exceed $50,000.00.  Class Counsel submit that these amounts are fair and reasonable given their investment of time and expense over the nearly three years that they have been litigating this case, their contingent fee risk, and the result that they have achieved for the Putative Class Members.  The fees that will be requested are based on the amount that will be paid out to the Class, and are within the range of reasonableness established by Ninth Circuit authority.  *See, e.g., Knight v. Red Door Salons, Inc.*, (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 11149, *17 (observing that class action fee awards average around one-third of the recovery) (citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (2002) ("exceptional results" in "absence of supporting precedents" is relevant to fee determination).

Class Counsel have expended significant time litigating this matter, with a risk of no recovery.  With their application for fees and costs, Class Counsel will provide the Court with a detailed breakdown of their hours worked and fees incurred for a lodestar cross-check.  Many courts have found that an award of one third of the common fund is warranted under certain circumstances.  *See, e.g., In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *8-*17 (C.D. Cal. June 10, 2005); *Ogbuehi v. Comcast of California/Colorado/Florida/ Oregon, Inc.*, No. 2:13-CV-00672-KJM, 2015 WL 3622999, at *11-*12 (E.D. Cal. June 9, 2015); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *6 (E.D.N.Y. Aug. 7, 1998).  Class Counsel should be given the opportunity to make such a showing to this Court through their application for fees and costs.

Class Counsel shall file their application for fees and costs well in advance of the final approval hearing date, so that Putative Class Members can be fully informed of the fee request and have ample time to consider the request prior to the deadline for objecting and opting out.  *See In re Mercury Interactive Securities*

16

1    *Litigation* (9th Cir. 2010) 618 F.3d 988, 994.  The fee motion will be heard at the

2    same time as the final approval motion.

3         5.   Plaintiffs' Proposed Enhancement Awards Are Reasonable.

4         Service or incentive awards are typical in class action cases.  *Rodriguez v.*

5    *W. Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 958.  In evaluating incentive

6    awards, courts may consider "1) the risk to the class representative in commencing

7    suit, both financial and otherwise; 2) the notoriety and personal difficulties

8    encountered by the class representative; 3) the amount of time and effort spent by

9    the class representative; 4) the duration of the litigation and; 5) the personal benefit

10   (or lack thereof) enjoyed by the class representative as a result of the litigation."

11   *Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294, 299.

12   Here, Class Counsel believe that the Class Representative Enhancement award up

13   to the total amount requested of $5,000.00 each is consistent with a fair, just and

14   adequate settlement.[1]

15        Plaintiffs initiated this case and sought counsel to represent the proposed

16   Class.  Plaintiffs met with Class Counsel and provided documentary evidence

17   relevant to the claims in the case.  Boyamian Decl., ¶ 25.  Each Class

18   Representative also participated in a full day of their own deposition in which they

19   were heavily questioned about the facts and circumstances surrounding their work

20   with Defendants. Plaintiffs also risked their own professional reputation by suing

21   their, alleged, former and current employer.  Any potential future employer who

22   searches the internet or runs a background check on Plaintiffs will discover this

23   fact.  In a competitive job market, this factor may weigh heavily against them.

24

25   ───────────────

26   [1] Plaintiffs Ramon Garcia and Victor Ramirez are not designated as Class
     Representatives for purposes of this lawsuit and settlement against XPO and
     Macy's.  Mr. Garcia did not perform delivery services during the Class Period
27   when XPO operated the Macy's warehouse. Similarly, during the Class Period,
     Mr. Ramirez was a contractor carrier and therefore did not attend his scheduled
28   deposition.

17

1   Therefore, Plaintiffs have also undertaken risks with respect to their future

2   employment prospects.  *Id*.

3       Plaintiffs will provide a supporting declaration at final approval describing

4   their efforts in this case, the amount of time spent serving the class, and the risks

5   they incurred.

6               6.   The Settlement Administrator Costs are Reasonable.

7       Plaintiffs propose appointing KCC Class Action Services, LLC ("KCC") as

8   the Settlement Administrator in this case.  Class Counsel has elected to use KCC

9   given their involvement in the earlier *Garcia I* settlement, and because it offered a

10  competitive bid, and because of Class Counsel's positive prior experiences with it.

11  Boyamian Decl., ¶ 26.  Class Counsel also believes KCC has an significant

12  advantage given its familiarity with the issues surrounding class participation and

13  receiving contact in the past from participating Class Members in the *Garcia I*

14  settlement.  KCC's estimate is attached.  Boyamian Decl., Exhibit "2".

15      The Settlement Administration Costs will be paid from the Gross Settlement

16  Amount.  The estimate from KCC provides that the settlement administration costs

17  will equal approximately $16,500.00, in line with the Settlement Agreement.  KCC

18  will file a declaration with the Court explaining the basis for the costs above

19  $15,000.00. Settlement Agreement ¶ 13.  The final settlement costs and supporting

20  documentation will be submitted to the Court prior to the final approval hearing.

21  The Settlement Administration Costs here are reasonable as compared to the value

22  of the settlement and the work that needs to be performed to administer the

23  Settlement properly.

24          **B.    The Class Should be Provisionally Certified.**

25      Plaintiffs requests that the Court provisionally certify the Rule 23(b)(3) class

26  for settlement purposes.  The purpose of provisional class certification is to

27  facilitate distribution to proposed class members a notice informing them of the

28  terms of the proposed settlement, and the date and time of the final approval

18

hearing.  *See* Manual for Complex Litigation, Fourth §§ 21.632-33.  For purposes of effectuating this Settlement only, Defendants Macy's and XPO LM do not oppose Plaintiffs' request to provisionally certify the Putative Class.  Settlement Agreement, ¶ 33(e).

### 1. Standards Governing Approval of Settlement Classes.

When considering a motion for preliminary approval of a settlement, the Court must make a threshold determination as to whether the proposed settlement class meets Rule 23 requirements.  *See Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019-20.  Specifically, under Rule 23(a), the Court must determine whether (1) the proposed class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) plaintiffs and their counsel will adequately and fairly represent the interests of the class.  *Id*. at 1019.

Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3).  *Id*. at 1022.  Based on these standards, as further discussed below, the Court should certify the proposed Settlement Class for settlement purposes.

### 2. The Class Satisfies the Requirements of Rule 23(a).

The proposed Class satisfies all requirements of Rule 23(a).  First, it is sufficiently numerous to satisfy Rule 23(a)(1).  "While there is no set number of members required, courts have generally found classes numbering in the hundreds to be sufficient to satisfy the numerosity requirement."  *Campbell v. PricewaterhouseCoopers* (E.D.Cal. 2008) 253 F.R.D. 586, 594.  In this case, the proposed class consists of approximately 300 Putative Class Members who worked for Defendants during the Class Period.  Boyamian Decl., ¶¶ 16, 17.  This will easily satisfy the numerosity requirement.

Second, Rule 23(a)(2) is satisfied because there are questions of law and fact common to the proposed Class.  *See Mazza v. Am. Honda Motor Co., Inc*. (9th Cir. 2012) 666 F.3d 581, 589 ("Commonality only requires a single significant question

19

of law or fact.").  The showing required to satisfy commonality is minimal. *Hanlon*, 150 F. 3d at 1020.  The presence of a single common question that will "drive the resolution of the litigation" is sufficient *Campbell v. PricewaterhouseCoopers, LLP* (E.D.Cal. 2012) 287 F.R.D. 615, 620.  Here, common factual and legal issues include whether Putative Class Members are employees that were improperly classified independent contractors.  That issue, alone, satisfies the commonality requirement of Rule 23(a)(2).  Boyamian Decl., ¶¶ 11-13.

Third, the typicality requirement of Rule 23(a)(3) is satisfied because the Plaintiffs claims are typical of the claims held by the Putative Class.  Typicality is established if representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Plaintiffs' claims arise out of the same factual and legal circumstances as the claims of Putative Class Members.  Plaintiffs contend that, like all Putative Class Members, they were unlawfully classified as independent contractors, regularly worked unpaid overtime hours, were deprived meal and rest period breaks and premiums, were not given accurate wage statements, and are 'aggrieved employees' under PAGA.  Because Defendants' business practices, about which the Plaintiffs complain, were uniform and impacted all Putative Class Members, Plaintiffs' claims against Defendants are typical of those of the Class.  Boyamian Decl., ¶ 13.

Fourth, Plaintiffs' Counsel satisfy the adequacy requirement of Rule 23(a)(4), as well as the requirements of Rule 23(g).  Rule 23(a)(4) requires that the Parties fairly and adequately protect the interests of the class.  The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other putative class members, and the named plaintiffs and their counsel will vigorously prosecute the interests of the class.  *Hanlon*, 150 F.3d at 1020.  Here, Plaintiffs and their experienced class counsel will more than

20

adequately represent the Putative Class.  There are no conflicts and Class Representatives have claims that are in line with those of the Class.  Plaintiffs have diligently participated in the litigation by communicating regularly with counsel and providing documents and information about the Class claims.  Boyamian Decl., ¶ 25.

Rule 23(g)(1) requires courts, when appointing class counsel, to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation and the type of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to its representation. Here, Class Counsel have investigated and prosecuted the claims; have extensive experience in class action litigation, including wage-and-hour claims, and have been appointed Class Counsel in numerous other cases; and have demonstrated that they have the ability and resources to vigorously pursue the claims.  Boyamian Decl., ¶¶ 2-6.  For these reasons, Plaintiffs' Counsel and Plaintiffs meet the adequacy requirement of Rule 23(a)(4).  Plaintiffs' Counsel should be appointed as Class Counsel pursuant to Rule 23(g).

### 3.  The Class Meets the Requirements of Rule 23(b)(3).

The Putative Class meets the requirements of Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."

First, the Putative Class satisfies the predominance requirement, which examines whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id*.

21

Here, common issues predominate because Plaintiffs' claims turn on a common liability issue suited to class-wide adjudication: whether or not the Putative Class Members are employees or properly classified as independent contractors under California law, based on the job duties and expectations applicable to all Drivers and Helpers.  Whether or not Drivers and Helpers are considered independent contractors under California law is an inherently common question that predominates over any individualized issues.  Liability for Plaintiffs' state law claims stem from this threshold question and thus depend upon common proof. Boyamian Decl., ¶ 14.

Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class-wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy."  *See Hanlon*, 150 F.3d at 1023.  The alternative to a single class action–numerous individual actions–would be inefficient and unfair.  *See, e.g., Custom LED, LLC v. eBay, Inc.*, (N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 122022 (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations").  Class actions are generally found to be superior where individual claims are relatively small, there is a large volume of individual claims, individuals lack a compelling interest in controlling their own litigation, and there would be a strain on judicial resources if individual claims were filed.  *See Wang v. Chinese Daily News, Inc.* (C.D. Cal. 2005) 231 F.R.D. 602, 614.

4.   Summary of the Terms of the Proposed Settlement Agreement and Release of Claims.

The complete details of the Settlement are contained in the Joint Stipulation of Class Action Settlement and Release, signed by the Parties (Exhibit "1" to the Boyamian Declaration).  A summary of the settlement's primary terms follows:

(i)   Class Definition

22

The Class is comprised of all individuals who performed services as Drivers and/or Helpers delivering Macy's products and/or furnishings, who did not sign a Delivery Service Agreement with Defendants, and who were tendered loads at the location identified as the Macy's Logistic and Operations Distribution Center, 1208 Whipple Road, Union City, California 94587, between December 28, 2014, and the Preliminary Approval Date.

(ii)    Settlement Amount

The Settlement Agreement provides that Defendant XPO will pay three million five hundred thousand dollars ($3,500,000.00) to fund a common settlement fund.  Settlement Agreement ¶ 1(m).  In exchange, Defendants XPO LM will receive a complete release as to the claims that were or could have been asserted in this suit.  Defendant Macy's will receive a complete release as to the claims that were or could have been asserted in this suit, limited only to the time period beginning December 28, 2014 through the Preliminary Approval Date (the statutory period prior to this was covered in the first settlement with defendant Eletto).  The gross settlement amount of $3,500,000.00 includes the amount to be distributed to the Putative Class members, attorneys' fees and costs, the Class Representative Enhancements, PAGA Payment, and settlement administration costs.

(iii)    Allocation of Payments and Distribution to<br/>Class Members

This is not a mandatory claims-made settlement.  Putative Class Members will receive a portion of the Net Settlement Amount as long as they do not opt out of the Settlement by submitting valid and timely exclusion forms to the Settlement Administrator, as set forth below and as explained in the Notice.  However, all Putative Class Members will be given the opportunity to submit a Verified Claim Form to specify the number of days they believed they worked within the Class

23

Period, subject to a reasonable adjustment after consultation with the Settlement Administrator and the Parties.  Settlement Agreement, ¶ 10(b)(ii), (c)(ii).

Payments to Putative Class Members from the Net Settlement Amount shall be allocated 85% as penalties and interest with the corresponding issuance of a Forms 1099-MISC, and 15% will be allocated as wages to be reported on an IRS Form W-2.  The Settlement Administrator will calculate the individual settlement awards to eligible Putative Class Members, and withhold federal, state and local tax from the portion allocated as wages.

The Net Settlement Amount will be divided between the Putative Class Member Drivers and Helpers with 60% of the amount earmarked for distribution to Putative Class Member Drivers, and 40% earmarked for distribution to Putative Class Member Helpers.  This division of the Net Settlement Amount was developed because Drivers earned a higher daily fixed rate than Helpers earned.  Settlement Agreement, ¶ 10(b), (c).

In order to calculate each Putative Class Member's share of the settlement, the Settlement Administrator will use the following formulas:

The proportionate share of the Driver Net Settlement Amount for each Settlement Class Member Driver who returns a Verified Claim Form shall be that Settlement Class Member Driver's numerator divided by the denominator.  The numerator for each Settlement Class Member Driver who returns a Verified Claim Form shall be the total number of days reported by that Settlement Class Member Driver, subject to a possible reasonable adjustment necessarily made after consultation among the Settlement Administrator and counsel for the Parties.  The denominator for each Settlement Class Member Driver who returns a Verified Claim Form shall be the total number of days worked by all Settlement Class Member Drivers, which has been calculated by an intensive review of the Defendants' records.   The Settlement Administrator will multiply the Driver Net Settlement Amount by the proportionate share of each Settlement Class Member

24

Driver who returns a Verified Claim Form to determine that Settlement Class Member Helper's settlement share.

The Settlement Class Member Drivers that do not submit a Verified Claim Form reporting the number of days they worked will share equally in the Driver Net Settlement Amount that has not been claimed by those Settlement Class Member Drivers who submit verified claim forms.  Settlement Agreement, ¶ 10(b).

The proportionate share of the Helper Net Settlement Amount for each Settlement Class Member Helper who returns a Verified Claim Form shall be that Settlement Class Member Helper's numerator divided by the denominator.  The numerator for each Settlement Class Member Helper who returns a Verified Claim Form shall be the total number of days reported by that Settlement Class Member Helper, subject to a possible reasonable adjustment necessarily made after consultation among the Settlement Administrator and counsel for Defendants and Plaintiffs.  The denominator for each Settlement Class Member Helper who returns a Verified Claim Form shall be the total number of days worked by all Settlement Class Member Drivers.  The Settlement Administrator will multiply the Helper Net Settlement Amount by the proportionate share of each Settlement Class Member Helper who returns a Verified Claim Form to determine that Settlement Class Member Helper's settlement share.

The Settlement Class Member Helpers who do not submit a Verified Claim Form reporting the days that they worked will share equally in Helper Net Settlement Amount that has not been claimed by those Settlement Class Member Helpers who submit verified claim forms.  Settlement Agreement, ¶ 10(c).

Checks issued to Settlement Class Members pursuant to this Settlement shall remain negotiable for a period of one-hundred and eighty (180) days from the date of mailing.  Settlement Class Members who fail to negotiate (*i.e.*, cash or deposit) their check(s) within the 180 day window shall remain subject to the terms of this Settlement.  After the expiration of the 180 days, the sum of any un-cashed/un-

25

1   deposited checks shall be distributed to the Legal Aid Society – Employment Law

2   Center.  Settlement Agreement, ¶ 10(d).

3           All compensation disputes will be resolved and decided by the Settlement

4   Administrator after conferring with counsel for the Parties.  The Settlement

5   Administrator's decision on all disputes will be final and non-appealable.

6   Settlement Agreement, ¶ 10(e).  Under no circumstance will the Gross Settlement

7   Amount or any portion thereof revert back to Defendants.  Settlement Agreement,

8   ¶¶ 10(d), 11(d).

9                       (iv)  Attorneys' Fees, Costs, and Enhancement Fees

10          Class Counsel may apply for, and Defendants will not oppose, an award of

11  attorneys' fees in an amount up to one-third (33-1/3%) of the Gross Settlement

12  Amount (one million one hundred sixty-six thousand six hundred and sixty-six

13  dollars and sixty-seven cents (or $1,166,666.67), and costs of up to $50,000.00, all

14  of which shall be paid exclusively from the Gross Settlement Amount.  In the event

15  that Class Counsel are not awarded their requested fees and costs, in whole or in

16  part, no non-awarded fees or costs shall revert to Defendants, instead will revert to

17  the Net Settlement Amount.  Settlement Agreement, ¶ 10(e).

18          The Class Representative Enhancement is in addition to the Plaintiffs'

19  individual settlement award.  In exchange for the Class Representative

20  Enhancement (up to but not to exceed $5,000.00 each), the Class Representatives

21  must execute a general release in favor of Defendants.  Defendants will not oppose

22  each Plaintiffs' enhancement petition so long as it does not exceed $5,000.00.  In

23  the event that the Class Representatives are not awarded the requested $5,000.00,

24  in whole or in part, no part of the requested award shall revert to Defendants, but

25  instead shall revert to the Net Settlement Amount.  Settlement Agreement, ¶ 10(e).

26                      (v)     Costs of Settlement Administration

27          The Settlement Administrator shall be entitled to payment, from the Gross

28  Settlement Amount, for the reasonable costs of administering this settlement.  In

                                        26

the event that the Settlement Administrator's reasonable costs of administering this settlement exceed $20,000.00, the Settlement Administrator shall file a declaration with the Court explaining the basis for the costs above $20,000.00 and seeking approval for payment of the additional reasonable costs out of the amount remaining from the Net Settlement Amount.  The Settlement Administrator shall not be paid for costs above $15,000.00 absent Court approval.  Settlement Agreement, ¶ 13.

(vi)    Administration of Notice and Opt-Out Process

This Settlement is not a claims-made settlement.  Putative Class Members do not need to submit claims in order to participate in the Settlement, however, Putative Class Members are encouraged to submit a Verified Claim Form in order to receive a more accurate distribution.  The Notice and Verified Claim Form, attached to the Settlement Agreement as Exhibit "A" and Exhibit "A-1", shall be sent by the Settlement Administrator to the Putative Class Members, by first class mail.  The Notice shall notify each Putative Class Member of the pendency of this suit, the nature of the claims, and the fact of partial settlement.  In addition, the Notice will notify Putative Class Member that they may submit a Verified Claim Form, attesting to the number of days that they delivered Macy's products that were tendered to them at the Whipple Road location, at any time from December 28, 2014, through the Preliminary Approval Date.  Settlement Agreement, ¶ 31.

Within fourteen (14) calendar days of the Preliminary Approval Date, Defendant XPO will provide the Settlement Class's identifying information to the Settlement Administrator.  In the event there is missing contact information, the Parties will make their best efforts to obtain and provide the approximate, last-known data/information.  Within twenty-one (21) calendar days of the Preliminary Approval Date, the Settlement Administrator will mail the Notice and Verified Claim Form to the Settlement Class.  Settlement Agreement, ¶ 14.

1    Putative Class Members will have forty-five (45) days in which to postmark

2    objections, disputes, and/or requests for exclusion.  The Settlement Administrator

3    will skip-trace returned mail and re-mail within five days.  Under no circumstances

4    will this extend the period for post-marking objections, disputes, and/or requests

5    for exclusion claims by more than an additional fifteen (15) days.  Settlement

6    Agreement, ¶ 16.  If an envelope so mailed has not been returned within thirty (30)

7    days of the mailing, it will be presumed that the Putative Class Member received

8    the Notice.  Settlement Agreement, ¶ 17.

9              (vii)   Disputes, Requests for Exclusion and Objections

10   The Notice shall provide forty-five (45) days from the mailing date of the

11   Notice for each Putative Class Member to (1) submit a Verified Claim Form; (2)

12   opt out of the Settlement; or (3) object to the settlement.  Settlement Agreement, ¶

13   21.

14   As Putative Class Members will not be allocated an initial number of days

15   worked, but will instead be given an opportunity to submit a Verified Claim Form,

16   disputes can only arise if the Settlement Administrator and the Parties make a

17   reasonable adjustment to the figure claimed on a Verified Claim Form.  In such a

18   circumstance, the Settlement Administrator will have the authority to resolve a

19   dispute stemming from a reasonable adjustment made on the Putative Class

20   Member's Verified Claim Form.  Settlement Agreement, ¶ 15.

21   Unless otherwise agreed to in writing by counsel for Plaintiffs and

22   Defendants, no opt out request will be accepted if postmarked to the Settlement

23   Administrator more than forty-five (45) calendar days after the date the Notice was

24   mailed to the Putative Class Member.  All original opt out requests shall be sent

25   directly to the Settlement Administrator at the address indicated on the Notice and

26   the Settlement Administrator will forward such opt out requests to Class Counsel

27   and Defense Counsel.  The Settlement Administrator will certify jointly to Class

28   Counsel and Defense Counsel the number of all Putative Class Members who have

28

submitted opt out requests, objections and/or disputes.  During the forty-five (45) day period after the date the Notice is mailed to Putative Class Members, the Settlement Administrator will provide this information beginning on the 15th day after the Notice is mailed, and will update this information every following seven (7) days.  Settlement Agreement, ¶ 22.

No later than twenty-one (21) calendar days prior to the Final Approval Hearing, the Settlement Administrator will submit a list to Class Counsel and Defense Counsel of all timely, valid opt out requests, disputes and all objections received from Putative Class Members.  Settlement Agreement, ¶ 23.  Defendants have the option of withdrawing from the settlement if seven percent (7 %) or more of the Putative Class Members opt out of the Settlement.  Settlement Agreement, ¶ 24.

Any Putative Class Member wishing to object to the Court's approval of this Settlement shall file any such written objections and/or memorandums of points and authorities in support thereof with the Court and shall serve Class Counsel and Defense Counsel no later than forty-five (45) days from the mailing of the Notice.  Settlement Agreement, ¶ 25.

A Putative Class Member who has submitted an opt-out request may not submit any objections to the Settlement.  Any Putative Class Member who fails to file a timely written objection shall be foreclosed from objecting to this Settlement.  Settlement Agreement, ¶ 25.  Class Counsel and Defense Counsel shall file any response to any objections filed by objecting Putative Class Members at least seven (7) calendar days before the Final Approval Hearing.  Settlement Agreement, ¶ 26.

(vii)   Release of Claims

Upon the Final Approval Date, Putative Class Members who do not timely opt out shall fully release and discharge the Releasees from all claims, whether known or unknown, that were alleged or asserted, or that could have been alleged

29

or asserted based upon the factual allegations set forth in the operative complaint, in the Action, or in which any way arose out of or relate to the services they performed for Defendants Macy's or XPO LM at the Macy's Logistics and Operations distribution center, located at 1208 Whipple Road, Union City, California 94587 from December 28, 2014 to the Preliminary Approval Date. Settlement Agreement, ¶ 31. Finally, Plaintiffs have agreed to execute a general release of all claims against Defendants, both known and unknown.  This is further reason to grant the service payments sought. Settlement Agreement, ¶¶ 32-33; Boyamian Decl. ¶ 26.

# VII.   CONCLUSION

For all of the reasons set forth above, Plaintiffs' respectfully request that this Court certify the proposed class for settlement, and to grant preliminary approval of the class action settlement.

Dated May 13, 2019              BOYAMIAN LAW, INC.
                                LAW OFFICES OF THOMAS W. FALVEY
                                JML LAW, APLC


                                By: /s/ Michael H. Boyamian
                                    Michael H. Boyamian
                                    Attorneys for Plaintiffs and Putative Class

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 3:16-cv-04440-WHO**